**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

|  |  |
|---|---|
| GENERAL VIDEO, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>ASUSTEK COMPUTER INC., ASUS GLOBAL PTE. LTD., and ASUS TECHNOLOGY PTE. LTD.,<br><br>    Defendants. | Civil Action X:24-cv-<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff, General Video, LLC ("General Video" or "Plaintiff"), for its Complaint against Defendants, ASUSTeK Computer Inc. ("ASUSTeK"), ASUS Global Pte. Ltd. ("ASUS Global"), and ASUS Technology Pte. Ltd. ("ASUS Technology") (ASUSTeK, ASUS Global, and ASUS Technology are collectively referred to as "ASUS" or the "Defendants"), alleges as follows:

**THE PARTIES**

1.    General Video is a limited liability company organized and existing under the laws of the State of Delaware and with an address at 8 The Green, Suite B, Dover, DE 19901.

2.    Defendant ASUSTeK is a foreign company organized and existing under the laws of Taiwan with an address at No. 15, Li-Te Road, Beitou District, Taipei 112, Taiwan.

3.    Defendant ASUS Global is a foreign company organized and existing under the laws of Singapore, with an address at 15A Changi Business Park Central 1, #05-01 Eightrium, Singapore 486035.

4.      Defendant ASUS Technology is a foreign company organized and existing under the laws of Singapore, with an address at 5A Changi Business Park Central 1, #05-01 Eightrium, Singapore 486035.

5.      The parties to this action are properly joined under 35 U.S.C. § 299 because the right to relief asserted against Defendants jointly and severally arises out of the same series of transactions or occurrences relating to the making and using of the same products or processes, including laptop computers, desktop computers, computer monitors, and video/graphics cards bearing the ASUS brand.

## JURISDICTION AND VENUE

6.      This action for patent infringement arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*

7.      This Court has exclusive jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a).

8.      ASUS is subject to this Court's specific and general personal jurisdiction consistent with the principles of due process and/or the Texas Long Arm Statute, Tex. Civ. Prac. & Rem. Code Ann. § 17.042.

9.      ASUS sells and offers to sell products throughout the State of Texas, including in this District, and introduces infringing products into the stream of commerce knowing that they will be sold in the State of Texas and this District. For example, Defendant sells and offers to sell infringing products and services through its website, Asus.com, which may be accessed throughout the United States, the State of Texas, and this District. ASUS is currently, or has previously been, registered with the Secretary of State to do business in the state of Texas.

10.     ASUS has authorized sellers and sales representatives that offer for sale and sell products that are the subject of this Complaint throughout the State of Texas, including in this District, and to consumers throughout this District. For example, Best Buy at 4210 Saint Michael Drive, Texarkana, Texas 75503; Costco Wholesale, 3650 West University Drive, McKinney, Texas 75071; Office Depot, 111 Richmond Ranch Road, Texarkana, Texas 75503; Target, 102 Richmond Ranch Road, Texarkana, Texas 75503; Walmart Supercenter, 4000 New Boston Road, Texarkana, Texas 75503; and Sam's Club, 3610 Saint Michael Drive, Texarkana, Texas 75503, offer for sale and sell such subject ASUS products.

11.     ASUS is also subject to this Court's personal jurisdiction because it, directly, through, or in concert with subsidiaries, affiliates, or intermediaries, makes, uses, sells, offers for sale, imports, advertises, makes available, and/or markets products within the State of Texas and this District that infringe one or more claims of the asserted patents owned by General Video, as alleged more fully below.

12.     Venue in this District is proper under 28 U.S.C. § 1400(b). ASUS is a foreign entity for which venue is proper in any district.

13.     ASUS makes, uses, sells, offers for sale, and/or imports infringing products into and/or within this District, maintains a permanent and/or continuing presence within this District, and/or has the requisite minimum contacts with this District such that venue in this District is fair and reasonable. On information and belief, ASUS has transacted and, as of the time of the filing of this Complaint, is continuing to transact business within this District.

## THE GENERAL VIDEO PATENTS

14.     General Video is the assignee of, and has standing to sue and collect damages for ASUS' past and ongoing infringement associated with its products' implementation of DisplayPort functionality of, each of the following patents: U.S. Patent Nos. 6,584,443 ("the 443 Patent");

7,069,224 ("the 224 Patent"); 7,225,282 ("the 282 Patent"); 7,359,437 ("the 437 Patent"); 9,036,010 ("the 010 Patent"); and 9,843,786 ("the 786 Patent") (collectively, the "General Video Patents").

15.    The 443 Patent issued on June 24, 2003. The named inventors of the 443 Patent are: Akihisa Kawamura; Naoki Ejima; and Masatoshi Shimbo. The 443 Patent expired on April 20, 2020. A true and correct copy of the 443 Patent is attached as Exhibit 1 hereto.

16.    The 224 Patent issued on June 27, 2006. The named inventors of the 224 Patent are: Akihisa Kawamura; Naoki Ejima; and Masatoshi Shimbo. The 224 Patent expired on April 20, 2020. A true and correct copy of the 224 Patent is attached as Exhibit 2 hereto.

17.    The 282 Patent issued on May 29, 2007. The named inventor of the 282 Patent is Jim Lyle. A true and correct copy of the 282 Patent is attached as Exhibit 3 hereto.

18.    The 437 Patent issued on April 15, 2008. The named inventors of the 437 Patent are: Seung Ho Hwang; Jano Banks; Paul Daniel Wolf; Eric Lee; Baegin Sung; and Albert M. Scalise. A true and correct copy of the 437 Patent is attached as Exhibit 4 hereto.

19.    The 010 Patent issued on May 19, 2015. The named inventor of the 010 Patent is Nicole Burleigh Shepherd. A true and correct copy of the 010 Patent is attached as Exhibit 5 hereto.

20.    The 786 Patent issued on December 12, 2017. The named inventor of the 786 Patent is Nicoll Burleigh Shepherd. A true and correct copy of the 786 Patent is attached as Exhibit 6 hereto.

21.    The General Video Patents are generally directed to the high-speed, efficient, and secure transmission of audio and video data between transmitting and receiving devices. As set forth more fully in the numbered counts below with respect to each General Video Patent, claimed inventions of the General Video Patents are essential to, and must be used to comply with,

implementations of several versions of the DisplayPort standard promulgated by the Video Electronics Standards Association (VESA). The DisplayPort standards generally relate to the connection of source devices (e.g., desktop or laptop computers) and sink devices (e.g., computer monitors or laptop displays) and the transmission of packetized video, audio, and/or other forms of data between such source and sink devices. Further, and as also set forth more fully in the numbered counts below, claimed inventions of certain of the General Video Patents are essential to, and must be used to comply with, implementations of certain versions of the Embedded DisplayPort (eDP) standard, a companion standard to DisplayPort. The eDP standards are directed to display panel interfaces for portable and embedded devices and relate to the signaling interface between graphics cards and integrated displays, such as, for example, the integrated display on a laptop computer. Collectively and generally, the DisplayPort and eDP standards, implementations of which infringe one or more claims of any General Video Patent, are referred to herein as the "Infringing DP Standards."[1] VESA DisplayPort Standard, Version 1, Revision 2, which was introduced January 7, 2010 ("DP v1.2") infringes at least one claim of each of the General Video Patents and is thus always an Infringing DP Standard relative to the assertions herein. Specific additional Infringing DP Standards, and versions thereof, are further identified with respect to each General Video Patent in the numbered counts below. As such, each of the General Video Patents is a standard essential patent ("SEP") with respect to a respective identified subset of DisplayPort standards, eDP standards, or versions thereof.[2]

---

[1] A standard itself cannot infringe a patent claim. Instead, implementations of a standard embodied in the operability or functionality of standard-compliant products, or methods or processes performed pursuant to implementations of a standard, can infringe apparatus and/or method claims of a patent. Subject to that understanding, for ease of reference herein, General Video refers to "Infringing DP Standards."

[2] As the Federal Circuit has explained, "Creating some standards … is a complicated process that involves the collaboration and can involve cooperation of a number of interested parties. Due to the collaborative nature of this process, the chosen standard may include technology developed by a number of different

22.    Each of the General Video Patents is included among the pool of patents licensed and offered for license as part of the DisplayPort Patent Portfolio License (the "DP License") offered through Via Licensing Corporation d/b/a Via Licensing Alliance ("Via-LA"). *See* https://www.via-la.com/licensing-2/displayport/; https://www.via-la.com/licensing-2/displayport/displayport-patent-list/ (see downloadable list of licensed patents). General Video, Maxell, Ltd., Rambus Inc., and Sony Group Corporation are currently licensors under the DP License. *See* https://www.via-la.com/licensing-2/displayport/displayport-licensors/. To date, almost 100 companies are licensed under the DP License. *See* https://www.via-la.com/licensing-2/displayport/displayport-licensees/.

23.    Before the General Video Patents' inclusion as part of the DP License, each such patent was determined by an independent patent consultant to be an SEP with respect to one or more versions of the DisplayPort and/or eDP standards.

24.    VESA, which sets industry-wide interface standards for the PC, workstation, and consumer electronics display industry, approved the first version of the DisplayPort standard in May 2006.

25.    "VESA is an international nonprofit corporation led by a board of directors, which represents a voting membership of more than 300 corporate members worldwide." *See* https://www.displayport.org/. ASUS is a corporate member and partner of VESA. *Id.*

26.    VESA describes DisplayPort as

the industry replacement for outmoded display technologies such as DVI, LVDS and VGA and it's currently being built into all new PC chipsets, GPU's [sic] and display controllers from major silicon manufacturers. DisplayPort utilizes a state-of-the-art digital protocol and provides an expandable foundation to enable

---

parties. Sometimes that technology is covered by patents. Because the standard *requires* that devices utilize specific technology, compliant devices *necessarily* infringe certain claims in patents that cover technology incorporated into the standard. These patents are called 'standard essential patents' ('SEPs')." *Ericsson, Inc. v. D-Link Systems, Inc.*, 773 F.3d 1201, 1209 (Fed. Cir. 2014) (emphasis in original).

amazing digital display technology while providing compatibility with existing equipment.

* * *

DisplayPort has unique features and capabilities that enable exciting new types of displays and display usages. And it doesn't require PC owners to replace all of their equipment because simple adaptors allow DisplayPort enabled devices to connect to monitors and projectors that use older technologies such as DVI, HDMI and VGA.

https://vesa.org/about-displayport/.

27.    VESA further describes DisplayPort as "the Ultimate Digital Connection" that "[d]elivers a true digital display experience" and "[c]onnects to virtually any device."

https://vesa.org/displayport-developer/about-displayport/.

28.    VESA adopted eDP in December 2008, and describes that standard as follows:

For devices such as laptop PCs with an embedded display, eDP is the electrical interface for transporting video data from the system's graphics hardware to the internal display panel. eDP is widely adopted for larger, higher-resolution displays as it provides the highest resolutions, refresh rates and color depths using a low wire count with low EMI radiation.

* * *

eDP applications include laptops, all-in-one PCs, premium tablets, automotive displays, and other systems that incorporate a display panel with a video or graphics video source.

https://vesa.org/featured-articles/vesa-publishes-embedded-displayport-standard-version-1-5/.

**ASUS' ACCUSED PRODUCTS**

29.    ASUS makes, uses, sells, and/or offers to sell in, and/or imports into, the United States products that comply with, implement, and/or embody the Infringing DP Standards (collectively, the "Accused ASUS Products"). As set forth more fully in the numbered counts below with respect to each General Video Patent, the Accused ASUS Products and the operation thereof infringe the General Video Patents, including without limitation by complying with, implementing, and/or embodying the Infringing DP Standards. A non-exhaustive list of the Accused ASUS Products is included in Appendix A hereto.

30.     ASUS has in the past made, used, sold, and/or offered to sell in, and/or imported into, the United States products that complied with, implemented, and/or embodied the Infringing DP Standards (with the products described in paragraph 29 above, also "Accused ASUS Products"). As set forth more fully in the numbered counts below with respect to each General Video Patent, at least by having complied with, implemented, and/or embodied the Infringing DP Standards, the Accused ASUS Products that ASUS has in the past made, used, sold, offered to sell in, and/or imported into, the United States infringed the standard essential General Video Patents. A non-exhaustive list of Accused ASUS Products that ASUS has in the past made, used, sold, and/or offered to sell in, and/or imported into, the United States is included in Appendix A hereto.

31.     Rule 3-1 of the Rules of Practice for Patent Cases before the Eastern District of Texas requires that "[n]ot later than 10 days before the Initial Case Management Conference with the Court, [General Video] … must serve on [ASUS] a 'Disclosure of Asserted Claims and Infringement Contentions[,]'" which identifies "each accused apparatus, product, device, process, method, act, or other instrumentality … of [ASUS] of which [General Video] *is aware*." P.R. 3-1 (emphasis added). Rule 3-1 further requires that

> [t]his identification shall be as specific as possible. Each product, device, and apparatus must be identified by name or model number, *if known*. Each method or process must be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process….

P.R. 3-1(b) (emphasis added).

32.     Accordingly, in identifying ASUS products for inclusion among the Accused ASUS Products listed in Appendix A hereto, General Video has made such identification as specific as possible based on information of which General Video is aware and information known

to General Video through a reasonable prefiling investigation conducted in the ordinary course of business.

33.    Despite General Video's diligent efforts in this regard, it is possible – if not likely – that General Video does not have reasonable access to, is not reasonably aware of, and cannot reasonably know, the identity of all products that ASUS makes, uses, sells, and/or offers to sell in, and/or imports into, the United States that comply with, implement, and/or embody, or that ASUS has in the past made, used, sold, and/or offered to sell in, and/or imported into, the United States that complied with, implemented, and/or embodied, the Infringing DP Standards. Accordingly, in addition to the ASUS Products specifically identified in Appendix A hereto, General Video includes within the definition of "Accused ASUS Products" all products that ASUS has made, used, sold, and/or offered for sale in, and/or imported into, the United States at any time, that (1) have complied with, implemented, and/or embodied the Infringing DP Standards and/or (2) are or were no more than colorably different from any Accused ASUS Product(s) specifically identified in Appendix A hereto relative to such products' compliance with and/or implementation or embodiment of the Infringing DP Standards.

34.    Upon General Video's discovery of more specific information concerning the identity of additional Accused ASUS Products over the course of these proceedings, General Video will seasonably supplement or amend, and/or, if necessary, move for leave to supplement or amend, its identification of Accused ASUS Products as permitted under this District's Practice Rules. *See* P.R. 3-6; *see also Team Worldwide Corp. v. Wal-Mart Stores, Inc.*, No. 2:17-cv-00235-JRG, 2018 WL 3533362 (Jul. 23, 2018 E.D. Tex.) (granting plaintiff's motion for leave to amend infringement contentions); *id.*, at *9 ("At the time [plaintiff] TWW served its original infringement contentions, TWW did not know the names or model numbers it seeks to add to its infringement

contentions. To determine what it did not know, TWW visited Walmart stores, reviewed Walmart's online sales, and served upon Defendants interrogatories asking for such information. This is not, on its face, an unreasonable course of action.").

35.    On information and belief, and unless otherwise made clear by the description of a specific version of the Infringing DP Standards, the Accused ASUS Products employ, implement, embody, or utilize materially the same DisplayPort technology, such that the facts material to infringement by one Accused ASUS Product will likely be material to all Accused ASUS Products.

36.    Four general categories of Accused ASUS Products infringe the General Video Patents: ASUS laptop computers (the "Accused ASUS Laptops"); ASUS desktop computers (the "Accused ASUS Desktops"); ASUS computer monitors (the "Accused ASUS Monitors"); and ASUS video/graphics cards (the "Accused ASUS Graphics Cards").

37.    As shown below, as of August 2024, ASUS makes, uses, sells, and/or offers to sell in, and/or imports into, the United States at least 233 models of laptop computers, covering at least nine product lines.



See  https://www.asus.com/us/laptops/for-home/all-series/  (last visited August 23, 2024) (highlighting added).



*See*  https://www.asus.com/us/laptops/for-work/all-series/  (last visited August 23, 2024) (highlighting added).

38.     Based on information published on ASUS' website, many of the laptop computers ASUS sells and offers to sell comply with, implement, and/or embody the Infringing DP Standards, and those that do so are, therefore, Accused ASUS Laptops. For example, but without limitation, as shown below ASUS advertises its ASUS TUF Gaming A14 (2024) (Product ## FA401WV and FA401UV) as featuring DisplayPort media connectivity ports.



*See* https://www.asus.com/us/laptops/for-gaming/tuf-gaming/asus-tuf-gaming-a14-2024/ (last visited August 23, 2024) (highlighting added).



*See* https://www.asus.com/us/laptops/for-gaming/tuf-gaming/asus-tuf-gaming-a14-2024/techspec/ (last visited August 23, 2024) (highlighting added).

39.     DisplayPort Standard Version 1, Revision 4 ("DP v1.4"), with which the DisplayPort 1.4 ports included with the Accused ASUS Laptop described in paragraph 38 above comply, is an Infringing DP Standard as defined in paragraph 21 above and as further defined in the numbered counts below with respect to each of the General Video Patents.

40.     By way of additional example, but not limitation, as shown below, ASUS advertises its ROG Zephyrus M16 (2022) Laptop (Product ## GU603ZX, GU603ZW, GU603ZW, GU603ZM, and GU603ZE) as featuring two DisplayPort media connectivity ports (i.e., "Thunderbolt™ 4 port with DisplayPort 1.4" and "USB 3.2 Gen2 Type-C with DisplayPort™ 1.4").



*See* https://rog.asus.com/us/laptops/rog-zephyrus/rog-zephyrus-m16-2022-series/ (last visited August 23, 2024) (highlighting added).

41.     The Thunderbolt 4 port included with the Accused ASUS Laptop described in paragraph 40 above comply with, implement, and embody DP v1.4, an Infringing DP Standard as defined in paragraph 21 above and as further defined in the numbered counts below with respect

to each of the General Video Patents.. *See, e.g.,* https://www.intel.com/content/www/us/en/gaming/resources/devices-make-the-most-out-of-thunderbolt-4.html ("A Thunderbolt 4 port gives you a multitude of monitor options. Connect Thunderbolt™ displays, DisplayPort 1.4 displays, or use a Thunderbolt™ adapter or dock to connect HDMI, DVI, and VGA displays. Your choice.").

42.     A non-exhaustive list of Accused ASUS Laptops is included in the list of Accused ASUS Products identified in Appendix A hereto.

43.     As shown below, as of August 2024, ASUS makes, uses, sells, and/or offers to sell in, and/or imports into, the United States more than 70 models of desktop computer, covering at least six product classifications.



*See,* https://rog.asus.com/us/desktops/mid-tower-series/?items=36284,36285,86498 and https://www.asus.com/us/store/displays-desktops/ (last visited August 23, 2024) (highlighting added).

44.     Based on information published on ASUS' website, many of the desktop computers ASUS sells and offers to sell comply with, implement, and/or embody the Infringing DP Standards, and those that do so are, therefore, Accused ASUS Desktops. For example, but without limitation, as shown below ASUS advertises ROG Strix G15DS Desktop Computers (Product ## G15DS-

DH764, G15DS-DH764Ti, and G15DS-DH774) as featuring at least four DisplayPort media connectivity ports:



*See, e.g.,* https://rog.asus.com/us/desktops/mid-tower/rog-strix-g15ds-series/ and https://rog.asus.com/us/desktops/mid-tower/rog-strix-g15ds-series/spec/ (last visited August 23, 2024) (highlighting and underlining added).

45.     The DisplayPort 1.4 port included with the Accused ASUS Desktop described in paragraph 44 above complies with, implements, and embodies DP v1.4, an Infringing DP Standard as defined in paragraph 21 above and as further defined in the numbered counts below with respect to each of the General Video Patents.

46.     By way of additional example, but not limitation, as shown below, ASUS advertises its ASUS MiniPC PB63 Desktop as featuring at least two DisplayPort 1.4 media connectivity port(s):





*See, e.g.,* https://www.asus.com/us/displays-desktops/mini-pcs/pb-series/asus-minipc-pb63/  (last visited August 23, 2024) (underlining and highlighting added).

47.     The two native DisplayPorts included with ASUS MiniPC PB63 described in paragraph 46 above comply with, implement, and embody DP v1.4, an Infringing DP Standard as defined in paragraph 21 above and as further defined in the numbered counts below with respect to each of the General Video Patents.

48.     A non-exhaustive list of Accused ASUS Desktops is included in the list of Accused ASUS Products identified in Appendix A hereto.

49.     As shown below, as of July 2024, ASUS makes, uses, sells, and/or offers to sell in, and/or imports into, the United States at least 247 models of computer monitor, covering eight series.



See, e.g., https://www.asus.com/us/displays-desktops/monitors/all-series/ and https://www.asus.com/us/displays-desktops/monitors/all-series/filter?Spec=215880 (last visited August 23, 2024) (underlining added).

50.     Based on information published on ASUS' website, the majority of computer monitors ASUS sells and offers to sell comply with, implement, and/or embody the Infringing DP Standards, and those that do so are, therefore, Accused ASUS Monitors. As shown below, as of August 2024, ASUS makes, uses, sells, and/or offers to sell in, and/or imports into, the United States at least 137 models of computer monitor having DisplayPort Connectivity.



See, e.g., https://www.asus.com/us/displays-desktops/monitors/all-series/filter?Spec=474 (last visited August 23, 2024) (underlining added).

51.     By way of example, but without limitation, ASUS advertises its ROG Swift OLED PG39WCDM Monitor as featuring a DisplayPort media connectivity port:

 

*See*   https://rog.asus.com/us/monitors/above-34-inches/rog-swift-oled-pg39wcdm/spec/   (lasted visited August 23, 2024) (highlighting added).

52.     The DisplayPort media connectivity port included with the Accused ASUS Monitor described in paragraph 51 above complies with, implements, and embodies DP v1.4, an Infringing DP Standard as defined in paragraph 21 above and as further defined in the numbered counts below with respect to each of the General Video Patents.

53.     A non-exhaustive list of Accused ASUS Monitors is included in the list of Accused ASUS Products identified in Appendix A hereto.

54.     As shown below, as of August 2024, ASUSuses, sells, and/or offers to sell in, and/or imports into, the United States at least 160 models of graphics card, and 153 of those graphics cards offer DisplayPort media connectivity ports.

 

*See* https://www.asus.com/us/motherboards-components/graphics-cards/all-series/filter?Spec=21 5889 (last visited August 23, 2024) (highlighting added).

55.     Each of the 154 graphics cards sold and offered for sale by ASUS, and described in paragraph 54 above, comply with, implement, and/or embody the Infringing DP Standards, and those that do so are, therefore, Accused ASUS Graphics Cards.

56.     By way of example, but without limitation, ASUS advertises the ROG Strix GeForce RTX™ 4090 BTF OC Edition 24GB GDDR6X Graphics Card as featuring three DP v1.4a-compliant DisplayPort media connectivity ports:

 

*See* https://rog.asus.com/us/graphics-cards/graphics-cards/rog-strix/rog-strix-rtx4090-o24g-btf-gaming/spec/ and https://rog.asus.com/us/graphics-cards/graphics-cards/rog-strix/rog-strix-rtx409 0-o24g-btf-gaming/gallery/ (lasted visited August 23, 2024) (highlighting added).

57.     The three DisplayPort media connectivity ports included with the Accused ASUS Graphics Cards described in paragraph 56 above comply with, implement, and embody DP v1.4a, an Infringing DP Standard as defined in paragraph 21 above and further defined in the numbered counts below with respect to each of the General Video Patents.

58.     ASUS currently advertises on its website that the representative examples of Accused ASUS Products described above, and currently advertises, or has in the past advertised, that the numerous, specific Accused ASUS Products identified in Appendix A hereto, comply with and utilize, or have in the past complied with and utilized, one or more of the Infringing DP Standards. In addition to ASUS's own advertising representations in this regard, VESA identifies hundreds of ASUS products as being "VESA CERTIFIED DISPLAYPORT PRODUCTS." *See, e.g.,*     https://www.displayport.org/product-category/monitors-tvs/?ps&pman%5B0%5D=asus (first of 20 search result pages identifying as Certified DisplayPort Products 159 ASUS monitors).

### ASUS'S KNOWLEDGE OF THE ASSERTED PATENTS

59.     As of and before January 2017, MPEG LA, a patent pool administration company, administered the DP License (*see* paragraph 22 above), which provided licensing rights to a portfolio of patents found by an independent patent consultant to each be essential to various respective DisplayPort standards, including DP v1.2, an Infringing DP Standard as defined in paragraph 21 above. In April 2023, MPEG LA was acquired by Via-LA.

60.     On information and belief, before January 27, 2017, MPEG LA, on behalf of General Video and its predecessors-in-interest, provided notice to ASUS, through ASUS employee, Christian Yang, (1) of the U.S. and foreign DisplayPort SEPs then administered and licensed by MPEG LA; (2) that such patents had been found by an independent patent consultant to be essential to various DisplayPort standards, including DP v1.2, an Infringing DP Standard as defined in paragraph 21 above; and (3) that ASUS, as a "company that offer[ed] products with

DisplayPort technology[,] need[ed] to be licensed under [those] essential patents and [would] benefit from the coverage that [the] DisplayPort License provides." A copy of a representative notice letter dated December 20, 2016, which, on information and belief, is substantively identical or very similar to the notice General Video provided ASUS, is attached as Exhibit 7 hereto. A list of patents licensed under the DP License as of and before that date is attached as Exhibit 8 hereto (DisplayPort Attachment 1, revised 3/1/2016). The list attached as Exhibit 8 hereto placed ASUS on notice of its infringement of the 010 Patent at least as of, and most likely earlier than, January 27, 2017.

61.     On further information and belief, in the same communication described in paragraph 60 above, MPEG LA, on behalf of General Video and its predecessors-in-interest, provided notice to ASUS, through ASUS employee, Christian Yang, of the remainder of the General Video Patents and ASUS's infringement thereof. Specifically, MPEG LA provided ASUS with: (1) an unsigned proposed version of the DP License, in which MPEG LA advised ASUS that (a) the "DP Patent Portfolio" included "the portfolio of DP Essential Patent(s) which are initially identified in Attachment 1 hereto, [and] which portfolio may be supplemented or reduced from time to time in accordance with the provisions of this Agreement," DP License § 1.7 (revised March 5, 2015), Exhibit 9 hereto, and (b) "amendments to Attachment 1 hereto, if any, shall be effective upon the posting of the new Attachment 1 on the website of the Licensing Administrator and such posting shall constitute notice pursuant to this Section," *id.* § 7.2.1, Ex. 9 hereto; and (2) a presentation entitled, on information and belief, "DisplayPort Patent Portfolio License Briefing," which presentation, on information and belief, notified Acer that the list of DisplayPort essential patents, i.e., "Attachment 1 to the License[,] is updated regularly" and can be found at "http://www.mpegla.com/main/programs/DisplayPort/Pages/PatentList.aspx."

62.    On information and belief, by posting new versions of Attachment 1 on its website as provided for in section 7.2.1 of the DP License, MPEG LA, as of the dates set forth below, provided ASUS with notice of the remainder of the General Video Patents and ASUS's infringement thereof at least by MPEG LA's assertion that ASUS had to obtain rights to those and the other patents in the DP Patent Portfolio by entering into the DP License:

- December 1, 2018: the 282 Patent, the 443 Patent, and the 224 Patent (DisplayPort Attachment 1, revised 12/1/2018, Ex. 10 hereto);

- June 1, 2021: the 437 Patent (DisplayPort Attachment 1, revised 6/1/2021, Ex. 11 hereto); and

- June 1, 2024: the 786 Patent (DisplayPort Attachment 1, revised 6/1/2024, Ex. 12 hereto).

## COUNT I: THE 443 PATENT

63.    Appendix B hereto is an exemplary patent claim chart that details how the inventions of claims 7 and 9 of the 443 Patent were essential to implementations of DP v1.2, relative to the transport of an audio stream between a source device (e.g., a desktop or laptop computer) and a sink device (e.g., a computer monitor).[3] The versions of the DisplayPort standard listed below (and applying the "DP v" abbreviation) include features that are either identical to, or materially the same as, the features of DP v1.2 shown to infringe claims 7 and 9 of the 443 Patent in Appendix B hereto. As such, these versions of the standard also infringed the 443 Patent during the term of that patent:

- DP v1.1, introduced April 2, 2007;

- DP v1.1a, introduced January 11, 2008;

---

[3] The 443 Patent expired on April 20, 2020.

- DP v1.2a, introduced January 2013;

- DP v1.3, introduced September 15, 2014;

- DP v1.4, introduced March 1, 2016;

- DP v1.4a, introduced April 2018; and

- DP v2.0, introduced June 26, 2019

(collectively with DP v1.2, the "443 Infringing DP Standards"). Thus, whoever used one or more products to perform the methods described in Appendix B hereto with respect to DP v1.2, and described in the corresponding portions of the other 443 Infringing DP Standards, during the term of the 443 Patent, directly infringed claims 7 and 9 of that patent in violation of 35 U.S.C. § 271(a). *See, e.g., Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1328 (Fed. Cir. 2010) (although "claims should be compared to the accused product to determine infringement," "if an accused product operates in accordance with a standard, then comparing the claims to that standard is the same as comparing the claims to the accused product").

64.     On information and belief, during the term of the 443 Patent, ASUS directly infringed at least claims 7 and 9 of that patent by using Accused ASUS Products in a manner that complied with the descriptions provided in Appendix B hereto with respect to DP v1.2, and the descriptions provided in the corresponding portions of the other 443 Infringing DP Standards.

65.     By way of example and not limitation, and on information and belief, during the term of the 443 Patent, ASUS employees used the Accused ASUS Products in such an infringing manner when transmitting audio signals from Accused ASUS Laptops, Accused ASUS Desktops, and any desktop computers with installed Accused ASUS Graphics Cards[4] via a DisplayPort

---

[4] Relative to the Accused ASUS Graphics Cards, the alleged direct infringement of method claims 7 and 9 of the 443 Patent by ASUS and ASUS's customers in this Count I presumes performance of the claimed

connection to Accused ASUS Monitors, where such audio signals were played as audible sound through (i) one or more built-in speakers on the monitor(s), (ii) one or more external speakers connected to an audio line-out port on the monitor(s), or (iii) headphones or earphones connected to an audio line-out port on the monitor(s). On its website, ASUS explains that customers should "[c]heck that your monitor has built-in speakers or it'll need to have an earphone jack to connect with the audio equipment in order to play. If you want to connect the audio source with a video cable, please make sure you're using **HDMI-to-HDMI** or **DisplayPort-to-DisplayPort** cables to connect with your PC. Because a VGA/DVI switch will filter out the audio source from HDMI or DP signals." https://www.asus.com/us/support/faq/1015182/ (emphasis in original).

66.    During the term of the 443 Patent, ASUS advertised Accused ASUS Laptops, Desktops, Graphics Cards, and Monitors as supporting DisplayPort media connectivity. By way of example and not limitation, as of and before April 11, 2020, ASUS made, used, offered for sale, and sold its ASUS ExpertBook B9450 laptop, which featured a "2 x Thunderbolt™ 3 USB-C™ (up to 40Gbps, DisplayPort and power delivery support)" media connectivity ports.[5] By way of further example and not limitation, as of and before April 11, 2020, ASUS made, used, offered for sale, and sold its VivoMini VC68V Mini PC desktop that "feature[d] two front USB 3.1 Gen 2 Type-A ports and four USB 3.1 Gen 1 Type-A ports. VivoMini VC68V also offer[ed] one HDMI port, two DisplayPort (support Ultra HD 4K)" media connectivity ports.[6] By way of further

---

methods by ASUS and ASUS's customers' use, in part, of computers having installed Accused ASUS Graphics Cards.

[5] *See, e.g.,* https://www.asus.com (archived at *Wayback Machine*, https://web.archive.org/web/2020 0411231400/https://www.asus.com/us/Laptops/Commercial-Series-Products/ (capture date 4/11/2020)) and https://www.asus.com/us/laptops/for-work/expertbook/asus-expertbook-b9-b9450/techspec/ (last visited 8/30/2024).

[6] *See, e.g.,* https://www.asus.com (archived at *Wayback Machine*, https://web.archive.org/web/2020 0411231351/https://www.asus.com/us/Mini-PCs/VivoMini-Products/ and https://web.archive.org/web/20 181004114922/https://www.asus.com/us/Mini-PCs/VivoMini-VC68V/ (captures dated 4/11/2020 and 10/4/2018, respectively)).

example and not limitation, as of and before May 3, 2018, ASUS at least offered for sale and sold ASUS GeForce® GTX 1050Ti 4GB PHOENIX Fan Edition DVI-D HDMI DP 1.4 Gaming Graphics Card, which featured "1 X Native DisplayPort media connectivity port.[7] The GeForce® GTX 1050Ti line of video cards was configured to provide "audio over DisplayPort."[8] By way of still further example but not limitation, as of and before April 12, 2020, ASUS made, used, offered for sale, and sold its "ROG Strix XG35VQ [monitor], [that] offers a wide selection of connectivity options, including DisplayPort 1.2, two HDMI ports and earphone jack."[9]

67.    By way of example and not limitation, and on information and belief, during the term of the 443 Patent, ASUS employees used Accused ASUS Products such as the Accused ASUS Laptop, Desktop, Graphics Card, and Monitor described in paragraph 66 above, and other Accused ASUS Laptops, Desktops, Graphics Cards, and Monitors, in the directly infringing manner described in paragraph 65 above, described in Appendix B hereto with respect to DP v1.2, and described in the corresponding portions of the other 443 Infringing DP Standards, when transmitting, receiving, playing, and/or recording audio signals at, between, and/or among ASUS's offices in the United States. *See, e.g.,* https://www.asus.com/us/support/article/1034/ and https://www.asus.com/us/About_ASUS/Facilities-Branches/. On information and belief, one of numerous examples of such directly infringing uses was when ASUS employees participated in video conferences or Voice over Internet Protocol (VoIP) calls using an Accused ASUS Laptop,

---

[7] *See, e.g.*, https://www.asus.com (archived at Wayback Machine https://web.archive.org/web/20180503060654/https://www.asus.com/us/Graphics-Cards/PH-GTX1050TI-4G/ (capture dated May 3, 2018)).

[8] *See, e.g.,* https://www.nvidia.com/en-us/geforce/drivers/results/118292/ (last visited 8/26/2024).

[9] *See, e.g.,* https://www.asus.com (archived at Wayback Machine, https://web.archive.org/web/20200412070342/https://www.asus.com/us/Monitors/Gaming-Products/ (captured dated 4/12/2020) and https://rog.asus.com/monitors/above-34-inches/rog-strix-xg35vq-model/ (last visited 8/15/2024)).

Accused ASUS Desktop, or Accused ASUS Graphics Card connected to an Accused ASUS Monitor as described above.

68.     On information and belief, during the term of the 443 Patent, another example of such directly infringing use was when ASUS employees streamed or played recorded or real-time audio-video content using Accused ASUS Laptops, Accused ASUS Desktops, or Accused ASUS Graphics Cards, such as those described in paragraph 66 above, and other Accused ASUS Laptops, Desktops, and Graphics Cards, connected to Accused ASUS Monitors, such as the one described in paragraph 66 above, and other Accused ASUS Monitors, in the manner generally described in paragraph 65 above, described in Appendix B hereto with respect to DP v1.2, and described in the corresponding portions of the other 443 Infringing DP Standards. On information and belief, one of numerous examples of such directly infringing uses was when ASUS employees played on an Accused ASUS Laptop, Accused ASUS Desktop, or Accused ASUS Graphics Card connected to an Accused ASUS Monitor as described above any of the thousands of videos with audio content that ASUS itself made available for streaming on its ASUS Support YouTube Channel. *See* https://www.youtube.com/@asus_support ("Find product tips, troubleshooting videos and useful tech-related knowledge from ASUS!").

69.     On information and belief, during the term of the 443 Patent, ASUS employees also used Accused ASUS Products in the directly infringing manner described above, described in Appendix B hereto with respect to DP v1.2, and described in the corresponding portions of the other 443 Infringing DP Standards, when they demonstrated Accused ASUS Products to actual and potential customers of Accused ASUS Products at trade shows, during product demonstrations, and – generally – as part of ASUS's marketing and sales operations. By way of example and not limitation, ASUS attends and exhibits its products at the annual Consumer

Electronics Show (CES) trade show. *See, e.g.,*https://www.ces.tech/innovation-awards/rog-swift-oled-pg49wcd/ (ASUS was a CES "2024 Honoree in Computer Hardware & Components" for its "ROG Swift OLED PG49WCD" curved computer monitor. The PG49WCD monitor features "DisplayPort 1.4 DSCx 1 . . . [and an] Earphone jack." https://rog.asus.com/us/monitors/above-34-inches/rog-swift-oled-pg49wcd/spec/. ASUS attended and exhibited its products at CES during the term, and before the April 20, 2020, expiration, of the 443 Patent. ASUS maintains a collection or articles relating to their CES 2020 offerings at https://rog.asus.com/tag/ces-2020/.

70.    On information and belief, during the term of the 443 Patent, ASUS employees also used Accused ASUS Products in the directly infringing manner described above, described in Appendix B hereto with respect to DP v1.2, and described in the corresponding portions of the other 443 Infringing DP Standards, when providing customer support to ASUS's actual and potential customers. By way of example and not limitation, and on information and belief, ASUS employees used Accused ASUS Products when troubleshooting and resolving technical issues for ASUS's actual and potential customers. In this regard, ASUS offered during the term of the 443 Patent, and currently offers, robust technical support services, which services include telephone support, online support (including but not limited to the "Customer Self Repair" and "ASUS Repair Services"), and online support libraries and video libraries that feature articles, tutorials, and videos to assist in troubleshooting and maintaining Accused ASUS Products. *See, e.g.,* https://www.asus.com/us/site/ASUS-Repair-Services/, https://www.asus.com/us/support/, and https://www.youtube.com/@asus_support.

71.    By way of further example and not limitation, and on information and belief, during the term of the 443 Patent, ASUS employees and/or ASUS's automated server-based customer support systems used and controlled ASUS customers' Accused ASUS Products in the directly

infringing manner described above, described in Appendix B hereto with respect to DP v1.2, and described in the corresponding portions of the other 443 Infringing DP Standards, when controlling customers' Accused ASUS Products during such customers' use of, by way of example and not limitation, the "ASUS Repair Services" program, https://www.asus.com/us/site/ASUS-Repair-Services/ where "ASUS-certified product experts service your unit free of charge" when in-warranty.

72.     On information and belief, during the term of the 443 Patent, ASUS employees also used Accused ASUS Products in the directly infringing manner described above, described in Appendix B hereto with respect to DP v1.2, and described in the corresponding portions of the other 443 Infringing DP Standards, when they tested the Accused ASUS Products to confirm compliance with the portions of DP v1.2 described in Appendix B hereto and/or the portions of the other 443 Infringing DP Standards. On information and belief, ASUS employees conducted at least some of the testing described in this paragraph using one or more of the "DisplayPort Authorized Test Tools" previously and still available via links on VESA's website. *See, e.g.,* https://vesa.org/authorized-test-tools/.

73.     Further, and on information and belief, with knowledge of the General Video Patents as described in paragraphs 59 to 62 above, ASUS actively induced infringement of at least claims 7 and 9 of the 443 Patent, during the term of that patent, in violation of 35 U.S.C. § 271(b). On information and belief, past users and customers of the Accused ASUS Products directly infringed at least claims 7 and 9 of the 443 Patent when they used the Accused ASUS Products for such products' ordinary, customary, and intended use, and, in particular, used Accused ASUS Products in the directly infringing manner described in Appendix B hereto with respect to DP v1.2, and described in the corresponding portions of the other 443 Infringing DP Standards. On

information and belief, ASUS's affirmative acts of inducement included, without limitation and with specific intent to encourage the infringement, having knowingly induced consumers to use the Accused ASUS Products within the United States in the ordinary, customary, and intended way, and, in particular, in the directly infringing manner described in Appendix B hereto with respect to DP v1.2, and described in the corresponding portions of the other 443 Infringing DP Standards, by, directly or through intermediaries, having supplied such Accused ASUS Products to customers within the United States and having instructed and encouraged such customers how to use the Accused ASUS Products in the ordinary, customary, and intended way, and, in particular, in the directly infringing manner described in Appendix B hereto with respect to DP v1.2, and described in the corresponding portions of the other 443 Infringing DP Standards, which use ASUS knew or should have known infringed at least claims 7 and 9 of the 443 Patent. ASUS's affirmative acts of inducement further included, without limitation and with specific intent to encourage the infringement, any one or a combination of encouraging and/or facilitating third-party infringement through having advertised, marketed, and disseminated the Accused ASUS Products and components thereof, including DisplayPort firmware and/or drivers; and having created, published and/or provided sales, promotional, and marketing materials; supporting materials; product manuals; user guides; and/or technical support and other information relating to the Accused ASUS Products and DisplayPort functionality thereof (*see, e.g.,* links in the paragraphs above to product and support pages and videos from ASUS's website) during the term of the 443 Patent.

74.    Further and in the alternative, on information and belief, with knowledge of the General Video Patents as described in paragraphs 59 to 62 above, ASUS contributed to the infringement of at least claims 7 and 9 of the 443 Patent, during the term of that patent, in violation

of 35 U.S.C. § 271(c). Users and customers of the Accused ASUS Products directly infringed at least claims 7 and 9 of the 443 Patent when they used the Accused ASUS Products for such products' ordinary, customary, and intended use, and, in particular, in the directly infringing manner described in Appendix B hereto with respect to DP v1.2, and described in the corresponding portions of the other 443 Infringing DP Standards. ASUS's contributory infringement included, without limitation, ASUS's sale and provision of Accused ASUS Products, including DisplayPort components thereof, to customers in the United States for use in practicing at least claims 7 and 9 of the 443 Patent, during the term of that patent, knowing that such products and components were material to practicing the claimed inventions, were not staple articles or commodities of commerce suitable for substantial non-infringing use, and were especially made or especially adapted for use in an infringement of the 443 Patent. Specifically, ASUS sold the Accused ASUS Products to customers knowing that the customers' operation of such products directly infringed at least claims 7 and 9 of the 443 Patent when used for their normal and intended purpose, and, in particular, when used in the directly infringing manner described in Appendix B hereto with respect to DP v1.2, and described in the corresponding portions of the other 443 Infringing DP Standards. The Accused ASUS Products and DisplayPort components thereof were made for the specific purpose of operating as described in Appendix B hereto with respect to DP v1.2, and as described in such corresponding portions of the other 443 Infringing DP Standards, and have no substantial non-infringing use.

75.    On information and belief, at least as of December 1, 2018, ASUS knew of the 443 Patent and MPEG LA's assertion that ASUS was an infringer as a "company that offers products with DisplayPort technology[,] need[ed] to be licensed under the[] essential patents" (Ex. 7 hereto, representative notice letter from MPEG LA dated December 20, 2016), including the 443 Patent

(Ex. 10 hereto, DisplayPort Attachment 1, revised 12/1/2018 (providing notice of addition to the DP License of the 282 Patent, the 443 Patent, the 224 Patent, and other patents essential to DisplayPort standards)).

76.    To the extent ASUS was unaware of the 443 Patent and MPEG LA's assertion that the 443 Patent is essential to the 443 Infringing DP Standards and ASUS, as an implementer of the 443 Infringing DP Standards and, thus, an infringer of the 443 Patent, required a license under the DP License as of, or within a reasonable time after, December 1, 2018, then ASUS should have known of the 443 Patent and MPEG LA's assertion by then but was willfully blind to the existence of the 443 Patent and its infringement of the same. For at least the foregoing reasons, ASUS's infringement of the 443 Patent was willful and deliberate.

## COUNT II: THE 224 PATENT

77.    Appendix C hereto is an exemplary patent claim chart that details how the inventions of claims 3 and 5 of the 224 Patent were essential to implementations of DP v1.2, relative to the receipt of audio data and audio-related information associated with such audio data.[10] The versions of the DisplayPort standard listed below include features that are identical to, or materially the same as, the features of DP v1.2 shown to infringe claims 3 and 5 of the 224 Patent in Appendix C hereto. As such, these versions of the standard also infringed the 224 Patent during the term of that patent:

- DP v1.1, introduced April 2, 2007;

- DP v1.1a, introduced January 11, 2008;

- DP v1.2a, introduced January 2013;

- DP v1.3, introduced September 15, 2014;

---

[10] The 224 Patent expired on April 20, 2020.

- DP v1.4, introduced March 1, 2016;

- DP v1.4a, introduced April 2018; and

- DP v2.0, introduced June 26, 2019

(collectively with DP v1.2, the "224 Infringing DP Standards"). Thus, whoever made, used, offered for sale, or sold any product that complied with, implemented, and/or embodied the portions of DP v1.2 described in Appendix C hereto, and/or complied with, implemented, and/or embodied the corresponding portions of the other 224 Infringing DP Standards, during the term of the 224 Patent, directly infringed claims 3 and 5 of that patent in violation of 35 U.S.C. § 271(a). *See, e.g., Fujitsu*, 620 F.3d at 1328 (Fed. Cir. 2010) (although "claims should be compared to the accused product to determine infringement," "if an accused product operates in accordance with a standard, then comparing the claims to that standard is the same as comparing the claims to the accused product").

78.    During the term of the 224 Patent, ASUS directly infringed at least claims 3 and 5 of that patent by making, using, selling, and/or offering to sell in, and/or importing into, the United States Accused ASUS Products that complied with, implemented, and embodied the description provided in Appendix C hereto with respect to DP v1.2, and the descriptions provided in the corresponding portions of the other 224 Infringing DP Standards.

79.    By way of example and not limitation, and on information and belief, during the term of the 224 Patent, ASUS directly infringed at least claims 3 and 5 of that patent by selling and offering to sell Accused ASUS Products such as certain Accused ASUS Monitors, that included a receiver operable to analyze and process audio data and audio-related information associated with the audio data in the infringing manner described in Appendix C hereto. *See, e.g., Sorrell Holdings, LLC v. Infinity Headwear & Apparel, LLC*, 2024 WL 413432, at *3 (Fed. Cir.

Feb. 5, 2024) ("For an 'accused device [] to be infringing, [it] need only be capable operating' in the infringing manner.") (bracketed text in original) (quoting *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991)). Evidence of actual operation is not required to prove infringement of apparatus claims 3 and 5 of the 224 Patent. However, on information and belief, there are numerous examples of Accused ASUS Monitors actually operating in the directly infringing manner described in Appendix C hereto with respect to DP v1.2, and described in the corresponding portions of the other 224 Infringing DP Standards, during the term of the 224 Patent. An example is whenever audio signals were transmitted from Accused ASUS Laptops, Accused ASUS Desktops, and any desktop computers with installed Accused ASUS Graphics Cards[11] via a DisplayPort connection to Accused ASUS Monitors, where such audio signals were capable of being played as audible sound through (i) one or more built-in speakers on the monitor(s), (ii) one or more external speakers connected to an audio line-out port on the monitor(s), or (iii) headphones or earphones connected to an audio line-out port on the monitor(s). On its website, ASUS explains that customers should "[c]heck that your monitor has built-in speakers or it'll need to have an earphone jack to connect with the audio equipment in order to play. If you want to connect the audio source with a video cable, please make sure you're using **HDMI-to-HDMI** or **DisplayPort-to-DisplayPort** cables to connect with your PC. Because a VGA / DVI switch will filter out the audio source from HDMI or DP signals." https://www.asus.com/us/support/faq/1015182/ (emphasis original).

80.    During the term of the 224 Patent, ASUS advertised Accused ASUS Monitors as supporting DisplayPort media connectivity, including audio connectivity. By way of example and

---

[11] Relative to the Accused ASUS Graphics Cards, the alleged direct infringement of claims 3 and 5 of the 224 Patent by ASUS and ASUS customers in this Count II presumes operation by ASUS and ASUS customers, in part, of computers having installed Accused ASUS Graphics Cards.

not limitation, as of and before April 16, 2020, ASUS made, used, offered for sale, and its "ROG Strix XG35VQ [computer monitor that] offers a wide selection of connectivity options, including DisplayPort 1.2, two HDMI ports and earphone jack."[12] This and any other Accused ASUS Monitor sold and offered for sale before the April 20, 2020, expiration of the 224 Patent that supported media connectivity using an Infringing DP Standard and included either an audio line-out and/or built-in speakers infringed at least claims 3 and 5 of the 224 Patent.

81.    On information and belief, and in addition to ASUS's direct infringement as described in paragraph 79 above, during the term of the 224 Patent, ASUS directly infringed at least claims 3 and 5 of the 224 Patent by using Accused ASUS Products in the directly infringing manner described in Appendix C hereto with respect to DP v1.2, and described in the corresponding portions of the other 224 Infringing DP Standards.

82.    By way of example and not limitation, and on information and belief, during the term of the 224 Patent, ASUS employees used Accused ASUS Monitors in such an infringing manner when transmitting audio signals from Accused ASUS Laptops, Accused ASUS Desktops, and Accused ASUS Graphics Cards via a DisplayPort connection to Accused ASUS Monitors, where, as discussed in the paragraphs above, such audio signals were played as audible sound through (i) one or more built-in speakers on the monitor(s), (ii) one or more external speakers connected to an audio line-out port on the monitor(s), or (iii) headphones or earphones connected to an audio line-out port on the monitor(s).

83.    By way of example and not limitation, and on information and belief, during the term of the 224 Patent, ASUS employees used Accused ASUS Monitors in the directly infringing

---

[12] *See, e.g.,* https://www.asus.com (archived at Wayback Machine, https://web.archive.org/web/20200412070342/https://www.asus.com/us/Monitors/Gaming-Products/ (captured dated 4/12/2020) and https://rog.asus.com/monitors/above-34-inches/rog-strix-xg35vq-model/ (last visited 8/15/2024)).

manner described in paragraph 79 above, described in Appendix C hereto with respect to DP v1.2, and described in the corresponding portions of the other 224 Infringing DP Standards, when transmitting, receiving, playing, and/or recording audio signals at, between, and/or among ASUS's offices in the United States. *See, e.g.,* https://www.asus.com/us/support/article/1034/ and https://www.asus.com/us/About_ASUS/Facilities-Branches/. On information and belief, one of numerous examples of such directly infringing uses was when ASUS employees participated in video conferences or Voice over Internet Protocol (VoIP) calls using an Accused ASUS Laptop, Accused ASUS Desktop, or Accused ASUS Graphics Card connected to an Accused ASUS Monitor as described above.

84.    On information and belief, another example of such directly infringing use during the term of the 224 Patent was when ASUS employees streamed or played recorded or real-time audio-video content using Accused ASUS Laptops, Accused ASUS Desktops, or Accused ASUS Graphics Cards such as those described in paragraph 66 above, and other Accused ASUS Laptops, Desktops, and Graphics Cards connected to Accused ASUS Monitors, such as the one described in paragraph 80 above, and other Accused ASUS Monitors, in the manner generally described in paragraph 79 above, described in Appendix C hereto with respect to DP v1.2, and described in the corresponding portions of the other 224 Infringing DP Standards. On information and belief, one of numerous examples of such directly infringing uses was when ASUS employees played on an Accused ASUS Laptop, Accused ASUS Desktop, or Accused ASUS Graphics Card connected to an Accused ASUS Monitor as described above any of the thousands of videos with audio content that ASUS itself made available for streaming on its ASUS Support YouTube Channel. *See* https://www.youtube.com/@asus_support ("Find product tips, troubleshooting videos and useful tech-related knowledge from ASUS!").

85.     On information and belief, during the term of the 224 Patent, ASUS employees also used Accused ASUS Monitors in the directly infringing manner described above, described in Appendix C hereto with respect to DP v1.2, and described in the corresponding portions of the other 224 Infringing DP Standards, when they demonstrated Accused ASUS Products to actual and potential customers of Accused ASUS Products at trade shows, during product demonstrations, and – generally – as part of ASUS's marketing and sales operations. By way of example and not limitation, ASUS attends and exhibits its products at the annual Consumer Electronics Show (CES) trade show. *See, e.g.,* https://www.ces.tech/innovation-awards/rog-swift-oled-pg49wcd/ (ASUS was a CES "2024 Honoree in Computer Hardware & Components" for its "ROG Swift OLED PG49WCD" curved computer monitor. The PG49WCD monitor features "DisplayPort 1.4 DSCx 1 . . . [and an] Earphone jack." https://rog.asus.com/us/monitors/above-34-inches/rog-swift-oled-pg49wcd/spec/. ASUS attended and exhibited its products at CES during the term, and before the April 20, 2020, expiration, of the 224 Patent. ASUS maintains a collection or articles relating to their CES 2020 offerings at https://rog.asus.com/tag/ces-2020/.

86.     On information and belief, during the term of the 224 Patent, ASUS employees also used Accused ASUS Monitors in the directly infringing manner described above, described in Appendix C hereto with respect to DP v1.2, and described in the corresponding portions of the other 224 Infringing DP Standards, when providing customer support to ASUS's actual and potential customers. By way of example and not limitation, and on information and belief, ASUS employees used Accused ASUS Products when troubleshooting and resolving technical issues for ASUS's actual and potential customers. In this regard, ASUS offered during the term of the 224 Patent, and currently offers, robust technical support services, which services include telephone support, online support (including but not limited to the "Customer Self Repair" and "ASUS

Repair Services"), and online support libraries and video libraries that feature articles, tutorials, and videos to assist in troubleshooting and maintaining Accused ASUS Products. *See, e.g.,* https://www.asus.com/us/site/ASUS-Repair-Services/,   https://www.asus.com/us/support/,   and https://www.youtube.com/@asus_support.

87.     By way of further example and not limitation, and on information and belief, during the term of the 224 Patent, ASUS employees and/or ASUS's automated server-based customer support systems used and controlled ASUS customers' Accused ASUS Products in the directly infringing manner described above, described in Appendix C hereto with respect to DP v1.2, and described in the corresponding portions of the other 224 Infringing DP Standards, when remotely controlling customers' Accused ASUS Products during such customers' use of, by way of example and not limitation, the "ASUS Repair Services" program, https://www.asus.com/us/site/ASUS-Repair-Services/ where "ASUS-certified product experts service your unit free of charge" when in-warranty.

88.     On information and belief, during the term of the 224 Patent, ASUS employees also used Accused ASUS Monitors in the directly infringing manner described above, described in Appendix C hereto with respect to DP v1.2, and described in the corresponding portions of the other 224 Infringing DP Standards, when they tested the Accused ASUS Monitors to confirm compliance with the portions of DP v1.2 described in Appendix C hereto and/or the corresponding portions of the other 224 Infringing DP Standards. On information and belief, ASUS employees conducted at least some of the testing described in this paragraph using one or more of the "DisplayPort Authorized Test Tools" previously and still available via links on VESA's website. *See, e.g.,* https://vesa.org/authorized-test-tools/.

89.     Further, and on information and belief, with knowledge of the General Video Patents as described in paragraphs 59 to 62 above, ASUS actively induced infringement of at least claims 3 and 5 of the 224 Patent, during the term of that patent, in violation of 35 U.S.C. § 271(b). On information and belief, past users and customers of the Accused ASUS Products directly infringed at least claims 3 and 5 of the 224 Patent when they used the Accused ASUS Products for such products' ordinary, customary, and intended use, and, in particular, used Accused ASUS Products in the directly infringing manner described in Appendix C hereto with respect to DP v1.2, and described in the corresponding portions of the other 224 Infringing DP Standards. On information and belief, ASUS's affirmative acts of inducement included, without limitation and with specific intent to encourage the infringement, having knowingly induced consumers to use the Accused ASUS Products within the United States in the ordinary, customary, and intended way, and, in particular, in the directly infringing manner described in Appendix C hereto with respect to DP v1.2, and described in the corresponding portions of the other 224 Infringing DP Standards, by, directly or through intermediaries, having supplied such Accused ASUS Products to customers within the United States and having instructed and encouraged such customers how to use the Accused ASUS Products in the ordinary, customary, and intended way, and, in particular, in the directly infringing manner described in Appendix C hereto with respect to DP v1.2, and described in the corresponding portions of the other 224 Infringing DP Standards, which use ASUS knew or should have known infringed at least claims 3 and 5 of the 224 Patent. ASUS's affirmative acts of inducement further included, without limitation and with specific intent to encourage the infringement, any one or a combination of encouraging and/or facilitating third-party infringement through having advertised, marketed, and disseminated the Accused ASUS Products and components thereof, including DisplayPort firmware and/or drivers; and having

created, published and/or provided sales, promotional, and marketing materials; supporting materials; product manuals; user guides; and/or technical support and other information relating to the Accused ASUS Products and DisplayPort functionality thereof (*see, e.g.,* links in the paragraphs above to product and support pages and videos from ASUS's website) during the term of the 224 Patent.

90.    Further and in the alternative, on information and belief, with knowledge of the General Video Patents as described in paragraphs 59 to 62 above, ASUS contributed to the infringement of at least claims 3 and 5 of the 224 Patent, during the term of that patent, in violation of 35 U.S.C. § 271(c). Users and customers of the Accused ASUS Products directly infringed at least claims 3 and 5 of the 224 Patent when they used the Accused ASUS Products for such products' ordinary, customary, and intended use, and, in particular, in the directly infringing manner described in Appendix C hereto with respect to DP v1.2, and described in the corresponding portions of the other 224 Infringing DP Standards. ASUS's contributory infringement included, without limitation, ASUS's sale and provision of Accused ASUS Products, including DisplayPort components thereof, to customers in the United States for use in practicing at least claims 3 and 5 of the 224 Patent, during the term of that patent, knowing that such products and components were material to practicing the claimed inventions, were not staple articles or commodities of commerce suitable for substantial non-infringing use, and were especially made or especially adapted for use in an infringement of the 224 Patent. Specifically, ASUS sold the Accused ASUS Products to customers knowing that the customers' operation of such products directly infringed at least claims 3 and 5 of the 224 Patent when used for their normal and intended purpose, and, in particular, when used in the directly infringing manner described in Appendix C hereto with respect to DP v1.2, and described in the corresponding portions of the other 224

Infringing DP Standards. The Accused ASUS Products and DisplayPort components thereof were made for the specific purpose of operating according to the one or more of the Infringing DP Standards and had no substantial non-infringing use.

91.    On information and belief, at least as of December 1, 2018, ASUS knew of the 224 Patent and MPEG LA's assertion that ASUS was an infringer as a "company that offers products with DisplayPort technology[,] need[ed] to be licensed under the[] essential patents" (Ex. 7 hereto, representative notice letter from MPEG LA dated December 20, 2016), including the 224 Patent (Ex. 10 hereto, DisplayPort Attachment 1, revised 12/1/2018 (providing notice of addition to the DP License of the 282 Patent, the 443 Patent, the 224 Patent, and other patents essential to DisplayPort standards)).

92.    To the extent ASUS was unaware of the 224 Patent and MPEG LA's assertion that the 224 Patent is essential to the 224 Infringing DP Standards and ASUS, as an implementer of the 224 Infringing DP Standards and, thus, an infringer of the 224 Patent, required a license under the DP License as of, or within a reasonable time after, December 1, 2018, then ASUS should have known of the 224 Patent and MPEG LA's assertion by then but was willfully blind to the existence of the 224 Patent and its infringement of the same. For at least the foregoing reasons, ASUS's infringement of the 224 Patent was willful and deliberate.

## COUNT III: THE 282 PATENT

93.    Appendix D hereto is an exemplary patent claim chart that details how the invention of claim 1 of the 282 Patent is essential to implementations of DP v1.2, relative to the bi-directional transmission of data between a source device (e.g., a desktop or laptop computer) and a sink device (e.g., a computer monitor). The versions of the DisplayPort and eDP standards listed below include features that are either identical to, or materially the same as, the features of DP v1.2 shown to

infringe claim 1 of the 282 Patent in Appendix D hereto. As such, these versions of the DisplayPort and eDP standards also infringe the 282 Patent:

- DP v1.1, introduced April 2, 2007;

- DP v1.1a, introduced January 11, 2008;

- DP v1.2a, introduced January 2013;

- DP v1.3, introduced September 15, 2014;

- DP v1.4, introduced March 1, 2016;

- DP v1.4a, introduced April 2018;

- DP v2.0, introduced June 26, 2019; and

- DP v2.1, introduced October 17, 2022

- eDP v1.1, introduced October 2009;

- eDP v1.2, introduced May 2010;

- eDP v1.3, introduced February 2011;

- eDP v1.4, introduced February 2013;

- eDP v1.4a, introduced February 2015;

- eDP v1.4b, introduced October 2015; and

- eDP v1.5, introduced October 2021

(collectively with DP v1.2, the "282 Infringing DP Standards"). Thus, whoever uses one or more products to perform the methods described in Appendix D hereto with respect to DP v1.2, and described in the corresponding portions of the other 282 Infringing DP Standards, directly infringes claim 1 of the 282 Patent in violation of 35 U.S.C. § 271(a). *See, e.g., Fujitsu*, 620 F.3d at 1328 (Fed. Cir. 2010) (although "claims should be compared to the accused product to determine infringement," "if an accused product operates in accordance with a standard, then comparing the claims to that standard is the same as comparing the claims to the accused product").

94.    On information and belief, ASUS directly infringes at least claim 1 of the 282 Patent by using Accused ASUS Products in a manner that complies with the description provided in Appendix D hereto with respect to DP v1.2, and the descriptions provided in the corresponding portions of the other 282 Infringing DP Standards.

95.     By way of example and not limitation, and on information and belief, ASUS employees use the Accused ASUS Products in such a directly infringing manner when transmitting data, such as video and audio data, from Accused ASUS Laptops, Accused ASUS Desktops, and any desktop computers with installed Accused ASUS Graphics Cards[13] via a DisplayPort connection to Accused ASUS Monitors. On its website, ASUS explains that customers should "[c]heck that your monitor has built-in speakers or it'll need to have an earphone jack to connect with the audio equipment in order to play. If you want to connect the audio source with a video cable, please make sure you're using **HDMI-to-HDMI** or **DisplayPort-to-DisplayPort** cables to connect with your PC. Because a VGA / DVI switch will filter out the audio source from HDMI or DP signals." https://www.asus.com/us/support/faq/1015182/ (emphasis original). As explained in paragraphs 29 to 58 above, ASUS advertises all the Accused ASUS Laptops, Desktops, Graphics Cards, and Monitors as supporting DisplayPort media connectivity. By way of further example and not limitation, and on information and belief, ASUS employees and ASUS customers also use Accused ASUS Laptops in a directly infringing manner during any operation of an Accused ASUS Laptop because such operation complies with the description provided in Appendix D hereto with respect to DP v1.2, and the descriptions provided in the corresponding portions of the other 282 Infringing DP Standards, including the corresponding portions of the eDP subset of such 282 Infringing DP Standards, by facilitating the bi-directional transmission of data between such Accused ASUS Laptop's iGPU/dGPU and such Accused ASUS Laptop's screen/display as recited in claim 1 of the 282 Patent. The independent ground for direct infringement by standalone use of an Accused ASUS Laptop described in the preceding sentence

---

[13] Relative to the Accused ASUS Graphics Cards, the alleged direct infringement of method claim 1 of the 282 Patent by ASUS and ASUS's customers in this Count III presumes performance of the claimed methods by ASUS and ASUS's customers' use, in part, of computers having installed Accused ASUS Graphics Cards.

applies in addition to, and irrespective of, the several examples of direct infringement by ASUS employees and ASUS customers described in paragraphs 96 to 103 below.

96.    By way of example and not limitation, and on information and belief, ASUS employees have used, and continue to use, Accused ASUS Products in a manner that directly infringes claim 1 of the 282 Patent as described above, as described in Appendix D hereto with respect to DP v1.2, and as described in the corresponding portions of the other 282 Infringing DP Standards, when operating Accused ASUS Laptops, Accused ASUS Desktops, and Accused ASUS Graphics Cards connected to Accused ASUS Monitors via a DisplayPort connection at, between, and/or among ASUS's offices in the United States. *See, e.g.,* https://www.asus.com/us/support/article/1034/ and https://www.asus.com/us/About_ASUS/Facilities-Branches/.    On information and belief, one of numerous examples of such directly infringing uses was when ASUS employees participated in video conferences or Voice over Internet Protocol (VoIP) calls using an Accused ASUS Laptop, Accused ASUS Desktop, or Accused ASUS Graphics Card connected to an Accused ASUS Monitor as described above.

97.    On information and belief, another example of ASUS employees having used, and continuing to use, Accused ASUS Products in a manner that directly infringes claim 1 of the 282 Patent is when ASUS employees stream or play recorded or real-time video content using an Accused ASUS Laptop, Accused ASUS Desktop, or Accused ASUS Graphics Card connected to an Accused ASUS Monitor via a DisplayPort connection as described above. On information and belief, one of numerous examples of such directly infringing uses is when ASUS employees play on an Accused ASUS Laptop, Accused ASUS Desktop, or Accused ASUS Graphics Card connected to an Accused ASUS Monitor as described above any of the thousands of videos with audio content that ASUS itself makes available for streaming on its ASUS Support YouTube

Channel. *See*  https://www.youtube.com/@asus_support  ("Find product tips, troubleshooting videos and useful tech-related knowledge from ASUS!").

98.     On information and belief, ASUS employees have also used, and continue to use, Accused ASUS Products in a manner that directly infringes claim 1 of the 282 Patent as described above, as described in Appendix D hereto with respect to DP v1.2, and as described in the corresponding portions of the other 282 Infringing DP Standards, when they demonstrate Accused ASUS Products to actual and potential customers of Accused ASUS Products at trade shows, during product demonstrations, and – generally – as part of ASUS's marketing and sales operations. By way of example and not limitation, ASUS attends and exhibits its products at the annual Consumer Electronics Show (CES) trade show. *See, e.g.,* https://www.ces.tech/innovation-awards/rog-swift-oled-pg49wcd/ (ASUS was a CES "2024 Honoree in Computer Hardware & Components" for its "ROG Swift OLED PG49WCD" curved computer monitor. The PG49WCD monitor features "DisplayPort 1.4 DSCx 1 . . . [and an] Earphone jack." https://rog.asus.com/us/monitors/above-34-inches/rog-swift-oled-pg49wcd/spec/.

99.     On information and belief, ASUS employees have also used, and continue to use, Accused ASUS Products in a manner that directly infringes claim 1 of the 282 Patent as described above, as described in Appendix D hereto with respect to DP v1.2, and as described in the corresponding portions of the 282 Infringing DP Standards, when providing customer support to ASUS's actual and potential customers. By way of example and not limitation, and on information and belief, ASUS employees have used, and continue to use, Accused ASUS Products when troubleshooting and resolving technical issues for ASUS's actual and potential customers. In this regard, ASUS has in the past offered, and currently offers, robust technical support services, which services include telephone support, online support (including but not limited to the "Customer Self

Repair" and "ASUS Repair Services"), and online support libraries and video libraries that feature articles, tutorials, and videos to assist in troubleshooting and maintaining Accused ASUS Products. *See, e.g.,* https://www.asus.com/us/site/ASUS-Repair-Services/, https://www.asus.com/us/support/, and https://www.youtube.com/@asus_support.

100.    By way of further example and not limitation, and on information and belief, ASUS employees and/or ASUS's automated server-based customer support systems have used and controlled, and continue to use and control, ASUS customers' Accused ASUS Products in the directly infringing manner described above, described in Appendix D hereto with respect to DP v1.2, and described in the corresponding portions of the other 282 Infringing DP Standards, when controlling customers' Accused ASUS Products during such customers' use of, by way of example and not limitation, the "ASUS Repair Services" program, https://www.asus.com/us/site/ASUS-Repair-Services/ where "ASUS-certified product experts service your unit free of charge" when in-warranty.

101.    On information and belief, ASUS employees have also used, and continued to use, Accused ASUS Products in the directly infringing manner described in Appendix D hereto with respect to DP v1.2, and described in the corresponding portions of the other 282 Infringing DP Standards, when they have tested, and continue to test, the Accused ASUS Products to confirm compliance with the portions of DP v1.2 described in Appendix D hereto and/or the corresponding portions of the other 282 Infringing DP Standards. On information and belief, ASUS employees conducted at least some of the testing described in this paragraph using one or more of the "DisplayPort Authorized Test Tools" made available via links on VESA's website. *See, e.g.,* https://vesa.org/authorized-test-tools/.

102.    Further, and on information and belief, with knowledge of the General Video Patents as described in paragraphs 59 to 62 above, ASUS has been actively inducing, and continues to actively induce, infringement of at least claim 1 of the 282 Patent in violation of 35 U.S.C. § 271(b). Users and customers of the Accused ASUS Products have directly infringed and continue to directly infringe at least claim 1 of the 282 Patent when they use the Accused ASUS Products for such products' ordinary, customary, and intended use, including by operation as described in Appendix D hereto with respect to DP v1.2, as described in the corresponding portions of the other 282 Infringing DP Standards, and, with respect to the standalone use of Accused ASUS Laptops, as described in paragraph 95 above. ASUS's affirmative acts of inducement have included, and continue to include, without limitation and with specific intent to encourage the infringement, knowingly inducing consumers to use the Accused ASUS Products within the United States in the ordinary, customary, and intended way by, directly or through intermediaries, supplying such Accused ASUS Products to customers within the United States and instructing and encouraging such customers how to use the Accused ASUS Products in the ordinary, customary, and intended way, which ASUS knows or should know infringes at least claim 1 of the 282 Patent. ASUS's affirmative acts of inducement have further included and continue to include, without limitation and with specific intent to encourage the infringement, any one or a combination of encouraging and/or facilitating third-party infringement through the advertisement, marketing, and dissemination of the Accused ASUS Products and components thereof; including DisplayPort firmware and/or drivers; and creating, publishing, and/or providing sales, promotional, and marketing materials; supporting materials; product manuals; user guides; and/or technical support and information relating to the Accused ASUS Products and DisplayPort functionality thereof (*see, e.g.,* links in the paragraphs above to product and support pages and videos from ASUS's website).

103.    Further and in the alternative, on information and belief, with knowledge of the General Video Patents as described in paragraphs 59 to 62 above, ASUS has been contributing to, and continues to contribute to, the infringement of at least claim 1 of the 282 Patent in violation of 35 U.S.C. § 271(c). Users and customers of the Accused ASUS Products have directly infringed and continue to directly infringe at least claim 1 of the 282 Patent when they use the Accused ASUS Products for such products' ordinary, customary, and intended use, and, in particular, in the directly infringing manner described in Appendix D hereto with respect to DP v1.2, as described in the corresponding portions of the other 282 Infringing DP Standards, and, with respect to the standalone use of Accused ASUS Laptops, as described in paragraph 95 above. ASUS's contributory infringement has included and continues to include, without limitation, ASUS's sale and provision of Accused ASUS Products, including DisplayPort components thereof, to customers in the United States for use in practicing at least claim 1 of the 282 Patent, knowing that such products and components are material to practicing the claimed inventions, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are especially made or especially adapted for use in an infringement of the 282 Patent. Specifically, ASUS has sold, and continues to sell, the Accused ASUS Products and components thereof to customers knowing that the customers' operation of such products directly infringes at least claim 1 of the 282 Patent when used for their normal and intended purpose, and, in particular, when used in the directly infringing manner described in Appendix D hereto with respect to DP v1.2, as described in the corresponding portions of the other 282 Infringing DP Standards, and, with respect to the standalone use of Accused ASUS Laptops, as described in paragraph 95 above. The Accused ASUS Products and DisplayPort components thereof have been made, and are made, for the specific purpose of operating as described in Appendix D hereto with respect to DP v1.2, as

described in such corresponding portions of the other 282 Infringing DP Standards, and, with respect to the standalone use of Accused ASUS Laptops, as described in paragraph 95 above, and have no substantial non-infringing use.

104.    On information and belief, at least as of December 1, 2018, ASUS knew of the 282 Patent and MPEG LA's assertion that ASUS was an infringer as a "company that offers products with DisplayPort technology[,] need[ed] to be licensed under the[] essential patents" (Ex. 7 hereto, representative notice letter from MPEG LA dated December 20, 2016), including the 282 Patent (Ex. 10 hereto, DisplayPort Attachment 1, revised 12/1/2018 (providing notice of addition to the DP License of the 282 Patent, the 443 Patent, the 224 Patent, and other patents essential to DisplayPort standards)).

105.    To the extent ASUS was unaware of the 282 Patent and MPEG LA's assertion that the 282 Patent is essential to the 282 Infringing DP Standards and ASUS, as an implementer of the 282 Infringing DP Standards and, thus, an infringer of the 282 Patent, required a license under the DP License as of, or within a reasonable time after, December 1, 2018, then ASUS should have known of the 282 Patent and MPEG LA's assertion by then but was willfully blind to the existence of the 282 Patent and its infringement of the same. For at least the foregoing reasons, ASUS's infringement of the 282 Patent has been, and continues to be, willful and deliberate.

106.    By the time of the trial of this case, ASUS will have known and intended that its continued actions since receiving the notice described above and, additionally, since receiving the notice provided by this Complaint, would infringe and actively induce and contribute to the infringement of at least claim 1 of the 282 Patent. For this reason as well, ASUS's infringement of the 282 Patent has been, and continues to be, willful and deliberate.

## COUNT IV: THE 437 PATENT

107.    Appendix E hereto is an exemplary patent claim chart that details how the invention of claim 41 of the 437 Patent is essential to implementations of DP v1.2, relative to encoding data for transmission over a serial link. The versions of the DisplayPort and eDP standards listed below include features that are either identical to, or materially the same as, the features of DP v1.2 shown to infringe claim 41 of the 437 Patent in Appendix E hereto. As such, these versions of the DisplayPort and eDP standards also infringe the 437 Patent:

- DP v1.0, introduced May 3, 2006;

- DP v1.1, introduced April 2, 2007;

- DP v1.1a, introduced January 11, 2008;

- DP v1.2a, introduced January 2013;

- DP v1.3, introduced September 15, 2014;

- DP v1.4, introduced March 1, 2016;

- DP v1.4a, introduced April 2018;

- DP v2.0, introduced June 26, 2019; and

- DP v2.1, introduced October 17, 2022

- eDP v1.1, introduced October 2009;

- eDP v1.2, introduced May 2010;

- eDP v1.3, introduced February 2011;

- eDP v1.4, introduced February 2013;

- eDP v1.4a, introduced February 2015;

- eDP v1.4b, introduced October 2015; and

- eDP v1.5, introduced October 2021

(collectively with DP v1.2, the "437 Infringing DP Standards"). Thus, whoever uses one or more products to perform the methods described in Appendix E hereto with respect to DP v1.2, and described in the corresponding portions of the other 437 Infringing DP Standards, directly infringes claim 41 of the 437 Patent in violation of 35 U.S.C. § 271(a). *See, e.g., Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1328 (Fed. Cir. 2010) (although "claims should be compared to the accused product to determine infringement," "if an accused product operates in accordance with a

standard, then comparing the claims to that standard is the same as comparing the claims to the accused product").

108.    On information and belief, ASUS directly infringes claim 41 of the 437 Patent by using Accused ASUS Products in a manner that complies with the description provided in Appendix E hereto with respect to DP v1.2, and the descriptions provided in the corresponding portions of the other 437 Infringing DP Standards.

109.    By way of example and not limitation, and on information and belief, ASUS employees have used, and continue to use, the Accused ASUS Products in such a directly infringing manner when transmitting data from Accused ASUS Laptops, Accused ASUS Desktops, and any desktop computers with installed Accused ASUS Graphics Cards[14] via a DisplayPort connection to Accused ASUS Monitors or other non-ASUS monitors. On its website, ASUS explains that customers should "[c]heck that your monitor has built-in speakers or it'll need to have an earphone jack to connect with the audio equipment in order to play. If you want to connect the audio source with a video cable, please make sure you're using **HDMI-to-HDMI** or **DisplayPort-to-DisplayPort** cables to connect with your PC. Because a VGA / DVI switch will filter out the audio source from HDMI or DP signals." https://www.asus.com/us/support/faq/1015182/ (emphasis original). As explained in paragraphs 29 to 58 above, ASUS advertises all the Accused ASUS Laptops, Desktops, Graphics Cards, and Monitors as supporting DisplayPort media connectivity. By way of further example and not limitation, and on information and belief, ASUS employees and ASUS customers also use Accused ASUS Laptops in a directly infringing manner during any operation of an Accused ASUS Laptop because such operation

---

[14] Relative to the Accused ASUS Graphics Cards, the alleged direct infringement of method claim 41 of the 437 Patent by ASUS and ASUS customers in this Count IV presumes performance of the claimed methods by ASUS and ASUS customers' use, in part, of computers having installed Accused ASUS Graphics Cards.

complies with the description provided in Appendix D hereto with respect to DP v1.2, and the descriptions provided in the corresponding portions of the other 437 Infringing DP Standards, including the corresponding portions of the eDP subset of such 437 Infringing DP Standards, by facilitating the encoding of data for transmission over a serial link between such Accused ASUS Laptop's iGPU/dGPU and such Accused ASUS Laptop's screen/display as recited in claim 41 of the 437 Patent. The independent ground for direct infringement by standalone use of an Accused ASUS Laptop described in the preceding sentence applies in addition to, and irrespective of, the several examples of direct infringement by ASUS employees and ASUS customers described in paragraphs 110 to 117 below.

110.    By way of example and not limitation, and on information and belief, ASUS employees have used, and continue to use, Accused ASUS Products in a manner that directly infringes claim 41 of the 437 Patent as described above, as described in Appendix E hereto with respect to DP v1.2, and as described in the corresponding portions of the other 437 Infringing DP Standards, when operating Accused ASUS Laptops, Accused ASUS Desktops, and Accused ASUS Graphics Cards connected to Accused ASUS Monitors via a DisplayPort connection at, between, and/or among ASUS's offices in the United States. *See, e.g.,* https://www.asus.com/us/support/article/1034/ and https://www.asus.com/us/About_ASUS/Facilities-Branches/ (identifying ASUS offices in Georgia, New York, Puerto Rico, and California). On information and belief, one of numerous examples of such directly infringing uses was when ASUS employees participated in video conferences or Voice over Internet Protocol (VoIP) calls using an Accused ASUS Laptop, Accused ASUS Desktop, or Accused ASUS Graphics Card connected to an Accused ASUS Monitor as described above.

111.    On information and belief, another example of ASUS employees having used, and continuing to use, Accused ASUS Products in a manner that directly infringes claim 41 of the 437 Patent is when ASUS employees stream or play recorded or real-time video content using an Accused ASUS Laptop, Accused ASUS Desktop, or Accused ASUS Graphics Card connected to an Accused ASUS Monitor via a DisplayPort connection as described above. On information and belief, one of numerous examples of such directly infringing uses is when ASUS employees play on an Accused ASUS Laptop, Accused ASUS Desktop, or Accused ASUS Graphics Card connected to an Accused ASUS Monitor as described above any of the thousands of videos with audio content that ASUS itself makes available for streaming on its ASUS Support YouTube Channel. *See* https://www.youtube.com/@asus_support ("Find product tips, troubleshooting videos and useful tech-related knowledge from ASUS!").

112.    On information and belief, ASUS employees have also used, and continue to use, Accused ASUS Products in a manner that directly infringes claim 41 of the 437 Patent as described above, as described in Appendix E hereto with respect to DP v1.2, and as described in the corresponding portions of the other 437 Infringing DP Standards with respect to the same claims, when they demonstrate Accused ASUS Products to actual and potential customers of Accused ASUS Products at trade shows, during product demonstrations, and – generally – as part of ASUS's marketing and sales operations. By way of example and not limitation, ASUS attends and exhibits its products at the annual Consumer Electronics Show (CES) trade show. *See, e.g.,* https://www.ces.tech/innovation-awards/rog-swift-oled-pg49wcd/ (ASUS was a CES "2024 Honoree in Computer Hardware & Components" for its "ROG Swift OLED PG49WCD" curved computer monitor. The PG49WCD monitor features "DisplayPort 1.4 DSCx 1 . . . [and an]

Earphone jack." https://rog.asus.com/us/monitors/above-34-inches/rog-swift-oled-pg49wcd/spec/.

113.    On information and belief, ASUS employees have also used, and continue to use, Accused ASUS Products in a manner that directly infringes claim 41 of the 437 Patent as described above, as described in Appendix E hereto with respect to DP v1.2, and as described in the corresponding portions of the 437 Infringing DP Standards, when providing customer support to ASUS's actual and potential customers. By way of example and not limitation, and on information and belief, ASUS employees have used, and continue to use, Accused ASUS Products when troubleshooting and resolving technical issues for ASUS's actual and potential customers. In this regard, ASUS has in the past offered, and currently offers, robust technical support services, which services include telephone support, online support (including but not limited to the "Customer Self Repair" and "ASUS Repair Services"), and online support libraries and video libraries that feature articles, tutorials, and videos to assist in troubleshooting and maintaining Accused ASUS Products. *See, e.g.,* https://www.asus.com/us/site/ASUS-Repair-Services/, https://www.asus.com/us/support/, and https://www.youtube.com/@asus_support.

114.    By way of further example and not limitation, and on information and belief, ASUS employees and/or ASUS's automated server-based customer support systems have used and controlled, and continue to use and control, ASUS customers' Accused ASUS Products in the directly infringing manner described above, described in Appendix E hereto with respect to DP v1.2, and described in the corresponding portions of the other 437 Infringing DP Standards, when controlling customers' Accused ASUS Products during such customers' use of, by way of example and not limitation, the "ASUS Repair Services" program, https://www.asus.com/us/site/ASUS-

Repair-Services/ where "ASUS-certified product experts service your unit free of charge" when in-warranty.

115.    On information and belief, ASUS employees have also used, and continued to use, Accused ASUS Products in the directly infringing manner described in Appendix E hereto with respect to DP v1.2, and described in the corresponding portions of the other 437 Infringing DP Standards, when they have tested, and continue to test, the Accused ASUS Products to confirm compliance with the portions of DP v1.2 described in Appendix E hereto and/or the corresponding portions of the other 437 Infringing DP Standards. On information and belief, ASUS employees conducted at least some of the testing described in this paragraph using one or more of the "DisplayPort Authorized Test Tools" made available via links on VESA's website. *See, e.g.,* https://vesa.org/authorized-test-tools/.

116.    Further, and on information and belief, with knowledge of the General Video Patents as described in paragraphs 59 to 62 above, ASUS has been actively inducing, and continues to actively induce, infringement of at least claim 41 of the 437 Patent in violation of 35 U.S.C. § 271(b). Users and customers of the Accused ASUS Products have directly infringed and continue to directly infringe at least claim 41 of the 437 Patent when they use the Accused ASUS Products for such products' ordinary, customary, and intended use, including by operation as described in Appendix E hereto with respect to DP v1.2, as described in the corresponding portions of the other 437 Infringing DP Standards, and, with respect to the standalone use of Accused ASUS Laptops, as described in paragraph 109 above. ASUS's affirmative acts of inducement have included, and continue to include, without limitation and with specific intent to encourage the infringement, knowingly inducing consumers to use the Accused ASUS Products within the United States in the ordinary, customary, and intended way by, directly or through intermediaries, supplying such

Accused ASUS Products to customers within the United States and instructing and encouraging such customers how to use the Accused ASUS Products in the ordinary, customary, and intended way, which ASUS knows or should know infringes at least claim 41 of the 437 Patent. ASUS's affirmative acts of inducement have further included and continue to include, without limitation and with specific intent to encourage the infringement, any one or a combination of encouraging and/or facilitating third-party infringement through the advertisement, marketing, and dissemination of the Accused ASUS Products and components thereof, including DisplayPort firmware and/or drivers; and creating, publishing, and/or providing sales, promotional, and marketing materials; supporting materials; product manuals; user guides; and/or technical support and information relating to the Accused ASUS Products and DisplayPort functionality thereof (*see, e.g.,* links in the paragraphs above to product and support pages and videos from ASUS's website).

117.    Further and in the alternative, on information and belief, with knowledge of the General Video Patents as described in paragraphs 59 to 62 above, ASUS has been contributing to, and continues to contribute to, the infringement of at least claim 41 of the 437 Patent in violation of 35 U.S.C. § 271(c). Users and customers of the Accused ASUS Products have directly infringed and continue to directly infringe at least claim 41 of the 437 Patent when they use the Accused ASUS Products for such products' ordinary, customary, and intended use, including by operation as described in Appendix E hereto with respect to DP v1.2, as described in the corresponding portions of the other 437 Infringing DP Standards, and, with respect to the standalone use of Accused ASUS Laptops, as described in paragraph 109 above. ASUS's contributory infringement has included and continues to include, without limitation, ASUS's sale and provision of Accused ASUS Products, including DisplayPort components thereof, to customers in the United States for use in practicing at least claim 41 of the 437 Patent, knowing that such products and components

are material to practicing the claimed inventions, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are especially made or especially adapted for use in an infringement of the 437 Patent. Specifically, ASUS sold the Accused ASUS Products to customers knowing that the customers' operation of such products directly infringes at least claim 41 of the 437 Patent when used for their normal and intended purpose, including by operation as described in Appendix E hereto with respect to DP v1.2, as described in the corresponding portions of the other 437 Infringing DP Standards, and, with respect to the standalone use of Accused ASUS Laptops, as described in paragraph 109 above. The Accused ASUS Products and DisplayPort components thereof are made for the specific purpose of operating as described in Appendix E hereto with respect to DP v1.2, as described in such corresponding portions of the other 437 Infringing DP Standards, and, with respect to the standalone use of Accused ASUS Laptops, as described in paragraph 109 above, and have no substantial non-infringing use.

118.    On information and belief, as of June 1, 2021, ASUS knew of the 437 Patent and MPEG LA's assertion that ASUS was an infringer as a "company that offers products with DisplayPort technology[,] need[ed] to be licensed under the[] essential patents" (Ex. 7 hereto, representative notice letter from MPEG LA dated December 20, 2016), including the 437 Patent (Ex. 11 hereto, DisplayPort Attachment 1, revised 6/1/2021 (providing notice of addition to the DP License of the 437 Patent, and other patents essential to DisplayPort standards)).

119.    To the extent ASUS was unaware of the 437 Patent and MPEG LA's assertion that the 437 Patent is essential to the 437 Infringing DP Standards and ASUS, as an implementer of the 437 Infringing DP Standards and, thus, an infringer of the 437 Patent, required a license under the DP License as of, or within a reasonable time after, June 1, 2021, then ASUS should have known

of the 437 Patent and MPEG LA's assertion by then but was willfully blind to the existence of the 437 Patent and its infringement of the same. For at least the foregoing reasons, ASUS's infringement of the 437 Patent has been, and continues to be, willful and deliberate.

120.    By the time of the trial of this case, ASUS will have known and intended that its continued actions since receiving the notice described above and, additionally, since receiving the notice provided by this Complaint, would infringe and actively induce and contribute to the infringement of at least claim 41 of the 437 Patent. For this reason as well, ASUS's infringement of the 437 Patent has been, and continues to be, willful and deliberate.

## COUNT V: THE 010 PATENT

121.    Appendix F hereto is an exemplary patent claim chart that details how the inventions of claims 1 and 12 of the 010 Patent are essential to implementations of DP v1.2, relative to the transport of stereoscopic image data over a display interface. The versions of the DisplayPort and eDP standards listed below include features that are either identical to, or materially same as, the features of DP v1.2 shown to infringe claims 1 and 12 of the 010 Patent in Appendix F hereto. As such, these versions of the DisplayPort and eDP standards also infringe the 010 Patent:

- DP v1.2a, introduced January 2013;

- DP v1.3, introduced September 15, 2014;

- DP v1.4, introduced March 1, 2016;

- DP v1.4a, introduced April 2018;

- DP v2.0, introduced June 26, 2019; and

- DP v2.1, introduced October 17, 2022

- eDP v1.2, introduced May 2010;

- eDP v1.3, introduced February 2011;

- eDP v1.4, introduced February 2013;

- eDP v1.4a, introduced February 2015;

- eDP v1.4b, introduced October 2015; and

- eDP v1.5, introduced October 2021

(collectively with DP v1.2, the "010 Infringing DP Standards"). Thus, whoever makes, uses, offers to sell, or sells any product that complies with, implements, and/or embodies the portions of DP v1.2 described in Appendix F hereto, and/or complies with, implements, and/or embodies the corresponding portions of the other 010 Infringing DP Standards, during the term of the 010 Patent, directly infringes claims 1 and 12 of that patent in violation of 35 U.S.C. § 271(a). *See, e.g., Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1328 (Fed. Cir. 2010) (although "claims should be compared to the accused product to determine infringement," "if an accused product operates in accordance with a standard, then comparing the claims to that standard is the same as comparing the claims to the accused product").

122.    ASUS directly infringes at least claims 1 and 12 of the 010 Patent by making, using, selling, and/or offering to sell in, and/or importing into, the United States Accused ASUS Products that comply with, implement, and/or embody the portions of DP v1.2 as described in Appendix F hereto, and that comply with, implement, and/or embody the corresponding portions of the other 010 Infringing DP Standards.

123.    By way of example and not limitation, and on information and belief, ASUS directly infringes at least claims 1 and 12 of the 010 Patent by selling and offering to sell Accused ASUS Products such as Accused ASUS Laptops, Accused ASUS Desktops, and Accused ASUS Graphics Cards that include a digital display interface part that supports a digital display interface between source devices, such as Accused ASUS Laptops, Accused ASUS Desktops, and Accused ASUS Graphics Cards on the one hand, and sink devices, such as computer monitors or displays, on the other hand, where such interface part is operable in the infringing manner described in Appendix F hereto with respect to DP v1.2, and described in the corresponding portions of the other 010 Infringing DP Standards. *See, e.g., Sorrell Holdings, LLC v. Infinity Headwear &*

*Apparel, LLC*, 2024 WL 413432, at *3 (Fed. Cir. Feb. 5, 2024) ("For an 'accused device []' to be infringing, [it] need only be capable operating' in the infringing manner.") (bracketed text in original) (quoting *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991)).

124.    Further, and on information and belief, with knowledge of the General Video Patents as described in paragraphs 59 to 62 above, ASUS has been actively inducing, and continues to actively induce, infringement of at least claims 1 and 12 of the 010 Patent in violation of 35 U.S.C. § 271(b). Users and customers of the Accused ASUS Products have directly infringed and continue to directly infringe at least claims 1 and 12 of the 010 Patent when they use the Accused ASUS Products for such products' ordinary, customary, and intended use, including by operation as described in Appendix F hereto with respect to DP v1.2 as to those claims, and as described in the corresponding portions of the other 010 Infringing DP Standards with respect to the same claims. ASUS's affirmative acts of inducement have included, and continue to include, without limitation and with specific intent to encourage the infringement, knowingly inducing consumers to use the Accused ASUS Products within the United States in the ordinary, customary, and intended way by, directly or through intermediaries, supplying such Accused ASUS Products to customers within the United States and instructing and encouraging such customers how to use the Accused ASUS Products in the ordinary, customary, and intended way, which ASUS knows or should know infringes at least claims 1 and 12 of the 010 Patent. ASUS's affirmative acts of inducement have further included and continue to include, without limitation and with specific intent to encourage the infringement, any one or a combination of encouraging and/or facilitating third-party infringement through the advertisement, marketing, and dissemination of the Accused ASUS Products and components thereof, including DisplayPort firmware and/or drivers; and creating, publishing, and/or providing sales, promotional, and marketing materials; supporting

materials; product manuals; user guides; and/or technical support and information relating to the Accused ASUS Products and DisplayPort functionality thereof (*see, e.g.,* links in the paragraphs above to product and support pages and videos from ASUS's website).

125.    Further and in the alternative, on information and belief, with knowledge of the General Video Patents as described in paragraphs 59 to 62 above, ASUS has been contributing to, and continues to contribute to, the infringement of at least claims 1 and 12 of the 010 Patent in violation of 35 U.S.C. § 271(c). Users and customers of the Accused ASUS Products have directly infringed and continue to directly infringe at least claims 1 and 12 of the 010 Patent when they use the Accused ASUS Products for such products' ordinary, customary, and intended use, including by operation as described in Appendix F hereto with respect to DP v1.2 as to those claims, and as described in the corresponding portions of the other 010 Infringing DP Standards with respect to the same claims. ASUS's contributory infringement has included and continues to include, without limitation, ASUS's sale and provision of Accused ASUS Products, including DisplayPort components thereof, to customers in the United States for use in practicing at least claims 1 and 12 of the 010 Patent, knowing that such products and components are material to practicing the claimed inventions, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are especially made or especially adapted for use in an infringement of the 010 Patent. Specifically, ASUS sold the Accused ASUS Products to customers knowing that the customers' operation of such products directly infringes at least claims 1 and 12 of the 010 Patent when used for their normal and intended purpose, including by operation as described in Appendix F hereto with respect to DP v1.2 as to those claims, and as described in the corresponding portions of the other 010 Infringing DP Standards with respect to the same claims. The Accused ASUS Products and DisplayPort components thereof are made for the specific purpose of operating as

described in Appendix F hereto with respect to DP v1.2, and as described in such corresponding portions of the other 010 Infringing DP Standards, and have no substantial non-infringing use.

126.    On information and belief, as of, and most likely earlier than, January 27, 2017, ASUS knew of the 010 Patent and MPEG LA's assertion that ASUS was an infringer as a "company that offers products with DisplayPort technology[,] need[ed] to be licensed under the[] essential patents" (Ex. 7 hereto, representative notice letter from MPEG LA dated December 20, 2016), including the 010 Patent (Ex. 8 hereto, DisplayPort Attachment 1, revised 3/1/2016 (including 010 Patent on list of patents essential to DisplayPort standards)).

127.    To the extent ASUS was unaware of the 010 Patent and MPEG LA's assertion that the 010 Patent is essential to the 010 Infringing DP Standards and ASUS, as an implementer of the 010 Infringing DP Standards and, thus, an infringer of the 010 Patent, required a license under the DP License as of, or within a reasonable time after January 27, 2017, then ASUS should have known of the 010 Patent and MPEG LA's assertion by then but was willfully blind to the existence of the 010 Patent and its infringement of the same. For at least the foregoing reasons, ASUS's infringement of the 010 Patent has been, and continues to be, willful and deliberate.

128.    By the time of the trial of this case, ASUS will have known and intended that its continued actions since receiving the notice described in above and, additionally, since receiving the notice provided by this Complaint, would infringe at least claims 1 and 12 of the 010 Patent. For this reason as well, ASUS's infringement of the 010 Patent has been, and continues to be, willful and deliberate.

## COUNT VI: THE 786 PATENT

129.    Appendix G hereto is an exemplary patent claim chart that details how the invention of claim 1 of the 786 Patent is essential to implementations of DP v1.2, with respect to the transport

of stereoscopic image data over a display interface. The versions of the DisplayPort and eDP standards listed below include features that are either identical to, or materially the same as, the features of DP v1.2 shown to infringe claim 1 of the 786 Patent in Appendix G hereto. As such, these versions of the DisplayPort and eDP standards also infringe the 786 Patent:

- DP v1.2a, introduced January 2013;
- DP v1.3, introduced September 15, 2014;
- DP v1.4, introduced March 1, 2016;
- DP v1.4a, introduced April 2018;
- DP v2.0, introduced June 26, 2019; and
- DP v2.1, introduced October 17, 2022

- eDP v1.2, introduced May 2010;
- eDP v1.3, introduced February 2011;
- eDP v1.4, introduced February 2013;
- eDP v1.4a, introduced February 2015;
- eDP v1.4b, introduced October 2015; and
- eDP v1.5, introduced October 2021

(collectively with DP v1.2, the "786 Infringing DP Standards").Thus, whoever makes, uses, offers to sell, or sells any product that complies with, implements, and/or embodies the portions of DP v1.2 described in Appendix G hereto, and/or complies with, implements, and/or embodies the corresponding portions of the other 786 Infringing DP Standards, during the term of the 786 Patent, directly infringes claim 1 of that patent in violation of 35 U.S.C. § 271(a). *See, e.g., Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1328 (Fed. Cir. 2010) (although "claims should be compared to the accused product to determine infringement," "if an accused product operates in accordance with a standard, then comparing the claims to that standard is the same as comparing the claims to the accused product").

130.    ASUS directly infringes at least claim 1 of the 786 Patent by making, using, selling, and/or offering to sell in, and/or importing into, the United States Accused ASUS Products that comply with, implement, and embody the portions of DP v1.2 as described in Appendix G hereto,

and that comply with, implement, and embody the corresponding portions of the other 786 Infringing DP Standards.

131.    By way of example and not limitation, and on information and belief, ASUS directly infringes at least claim 1 of the 786 Patent by selling and offering to sell Accused ASUS Products such as Accused ASUS Laptops, Accused ASUS Desktops, and Accused ASUS Graphics Cards that include a digital display interface part that supports a digital display interface between source devices, such as Accused ASUS Laptops, Accused ASUS Desktops, and Accused ASUS Graphics Cards, on the one hand, and sink devices, such as computer monitors or displays, on the other hand, where such interface part is operable in the infringing manner described in Appendix G hereto with respect to DP v1.2, and described in the corresponding portions of the other 786 Infringing DP Standards. *See, e.g., Sorrell Holdings, LLC v. Infinity Headwear & Apparel, LLC*, 2024 WL 413432, at *3 (Fed. Cir. Feb. 5, 2024) ("For an 'accused device [] to be infringing, [it] need only be capable operating' in the infringing manner.") (bracketed text in original) (quoting *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991)).

132.    Further, and on information and belief, with knowledge of the General Video Patents as described in paragraphs 59 to 62 above, ASUS has been actively inducing, and continues to actively induce, infringement of at least claim 1 of the 786 Patent in violation of 35 U.S.C. § 271(b). Users and customers of the Accused ASUS Products have directly infringed and continue to directly infringe at least claim 1 of the 786 Patent when they use the Accused ASUS Products for such products' ordinary, customary, and intended use, including by operation as described in Appendix G hereto with respect to DP v1.2 as to that claim, and as described in the corresponding portions of the other 786 Infringing DP Standards with respect to the same claim. ASUS's affirmative acts of inducement have included, and continue to include, without limitation and with

specific intent to encourage the infringement, knowingly inducing consumers to use the Accused ASUS Products within the United States in the ordinary, customary, and intended way by, directly or through intermediaries, supplying such Accused ASUS Products to customers within the United States and instructing and encouraging such customers how to use the Accused ASUS Products in the ordinary, customary, and intended way, which ASUS knows or should know infringes at least claim 1 of the 786 Patent. ASUS's affirmative acts of inducement have further included and continue to include, without limitation and with specific intent to encourage the infringement, any one or a combination of encouraging and/or facilitating third-party infringement through the advertisement, marketing, and dissemination of the Accused ASUS Products and components thereof, including DisplayPort firmware and/or drivers; and creating, publishing, and/or providing sales, promotional, and marketing materials; supporting materials; product manuals; user guides; and/or technical support and information relating to the Accused ASUS Products and DisplayPort functionality thereof (*see, e.g.,* links in the paragraphs above to product and support pages and videos from ASUS's website).

133.    Further and in the alternative, on information and belief, with knowledge of the General Video Patents as described in paragraphs 59 to 62 above, ASUS has been contributing to, and continues to contribute to, the infringement of at least claim 1 of the 786 Patent in violation of 35 U.S.C. § 271(c). Users and customers of the Accused ASUS Products have directly infringed and continue to directly infringe at least claim 1 of the 786 Patent when they use the Accused ASUS Products for such products' ordinary, customary, and intended use, including by operation as described in Appendix G hereto with respect to DP v1.2 as to that claim, and as described in the corresponding portions of the other 786 Infringing DP Standards with respect to the same claim. ASUS's contributory infringement has included and continues to include, without limitation,

ASUS's sale and provision of Accused ASUS Products, including DisplayPort components thereof, to customers in the United States for use in practicing at least claim 1 of the 786 Patent, knowing that such products and components are material to practicing the claimed inventions, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are especially made or especially adapted for use in an infringement of the 786 Patent. Specifically, ASUS sold the Accused ASUS Products to customers knowing that the customers' operation of such products directly infringes at least claim 1 of the 786 Patent when used for their normal and intended purpose, including by operation as described in Appendix G hereto with respect to DP v1.2 as to that claim, and as described in the corresponding portions of the other 786 Infringing DP Standards with respect to the same claim. The Accused ASUS Products and DisplayPort components thereof are made for the specific purpose of operating as described in Appendix G hereto with respect to DP v1.2, and as described in such corresponding portions of the other 786 Infringing DP Standards, and have no substantial non-infringing use.

134.    On information and belief, as of June 1, 2024, ASUS knew of the 786 Patent and MPEG LA's assertion that ASUS was an infringer as a "company that offers products with DisplayPort technology[,] need[ed] to be licensed under the[] essential patents" (Ex. 7 hereto, representative notice letter from MPEG LA dated December 20, 2016), including the 786 Patent (Ex. 12 hereto, DisplayPort Attachment 1, revised 6/1/2024 (providing notice of addition of the 786 Patent to DP License)).

135.    To the extent ASUS was unaware of the 786 Patent and MPEG LA's assertion that the 786 Patent is essential to the 786 Infringing DP Standards and ASUS, as an implementer of the 786 Infringing DP Standards and, thus, an infringer of the 786 Patent, required a license under the DP License as of, or within a reasonable time after June 1, 2024, then ASUS should have known

of the 786 Patent and MPEG LA's assertion by then but was willfully blind to the existence of the 786 Patent and its infringement of the same. For at least the foregoing reasons, ASUS's infringement of the 786 Patent has been, and continues to be, willful and deliberate.

136.    By the time of the trial of this case, ASUS will have known and intended that its continued actions since receiving the notice described above and, additionally, since receiving the notice provided by this Complaint, would infringe at least claim 1 of the 786 Patent. For this reason as well, ASUS's infringement of the 786 Patent has been, and continues to be, willful and deliberate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff General Video respectfully requests that this Court:

A.    Enter judgment in favor of General Video that each of the General Video Patents is valid and enforceable;

B.    Enter judgment in favor of General Video that ASUS has infringed each of the General Video Patents, continues to infringe the 282, 437, 010, and 786 Patents, and that such infringement is willful;

C.    Award General Video all monetary relief available under the laws of the United States, including but not limited to 35 U.S.C. § 284;

D.    Order ASUS to pay ongoing royalties in an amount to be determined for any continuing infringement after the date of judgment;

E.    Declare this case exceptional and award General Video its reasonable attorney fees under 35 U.S.C. § 285;

F.    Enter judgment awarding General Video its reasonable costs and expenses along with prejudgment and post-judgment interest as allowed by law;

G. Enjoin ASUS and its subsidiaries, and their officers, agents, servants, employees, and all persons in active concert with any of the foregoing from further infringement; and

H. Grant General Video all such other relief as the Court deems just and reasonable.

## JURY DEMAND

General Video demands a jury trial on all issues so triable pursuant to Federal Rule of Civil Procedure 38.

Dated: August 30, 2024

Respectfully submitted,

*/s/ Geoffrey Culbertson*

Peter J. McAndrews (*pro hac vice*)
pmcandrews@mcandrews-ip.com
Matthew G. McAndrews (*pro hac vice*)
mmcandrews@mcandrews-ip.com
McANDREWS, HELD & MALLOY, LTD.
500 West Madison St., 34th Floor
Chicago, IL 60661
Telephone: (312) 775-8000
Facsimile: (312) 775-8100

Geoff Culbertson
gpc@texarkanalaw.com
Kelly Tidwell
kbt@texarkanalaw.com
PATTON, TIDWELL & CULBERTSON, LLP
2800 Texas Boulevard (75503)
Post Office Box 5398
Texarkana, TX 75505-5398
Telephone: (903) 792-7080
Facsimile: (903) 792-8233

*Attorneys for Plaintiff,*
GENERAL VIDEO, LLC